**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

**JACOB O'BRYANT and
MARK BRANDON BAKER,**
*Individually, and on behalf of themselves
and other similarly situated current and
former employees*,

Case No. 2:19-cv-02378-SHL-tmp

       Plaintiffs,

v.

**ABC PHONES OF NORTH CAROLINA, INC.,
d/b/a VICTRA, f/d/b/a A Wireless,**
*a North Carolina Corporation,*

       Defendant.

**-------------------------------------------------------------/**

**PLAINTIFF-INTERVENORS' MOTION TO INTERVENE
AND INCORPORATED MEMORANDUM OF LAW**

Putative Intervenors Ron Hardney, Manuel Panngasiri, and Michelle Salway, along with

the 37 other Store Managers who have opted into the case styled *Hardney, et. al. v. ABC Phones*

*of North Carolina, Inc*., Case No. 1:19-cv-12722, in the United States District Court for the

District of New Jersey ("the *Hardney* Action"), pursuant to Federal Rule of Civil Procedure 24

and the Local Rules for the Western District of Tennessee, request the Court's permission to

intervene in this action.

The purpose of the intervention is to object to the FLSA[1] settlement in this case, which

seeks to encompass (and release) the claims of Putative Intervenors along with the collective

class in the *Hardney* Action, which in fact was the first-filed case.  As set forth below, Putative

Intervenors meet all of the requirements for mandatory intervention pursuant to Rule 24(a).

---

[1]      Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

I.      **FACTS**

1.      In late 2016, Shavitz Law Group, P.A. ("SLG" which is the undersigned counsel here) filed an action against Defendant, ABC Phones of North Carolina, Inc. ("ABC") in the Seventeenth Judicial Circuit in and for Broward County, Florida captioned *Nave, et. al. v. ABC Phones of North Carolina*, Inc., Case No. CACE-16-019224 ("the *Nave* Action"). The *Nave* Action sought relief for a collective of salaried, exempt-classified Store Managers employed by ABC between July 20, 2013 and August 1, 2016 (excluding in Arizona, California, Washington, Nevada, and Oregon). SLG, counsel for the Putative Intervenors, also was counsel for the plaintiffs and the FLSA collective in *Nave* and has an established history of litigating with ABC and its counsel. The parties settled the *Nave* action for a putative class of salaried Store Managers, who were notified of their right to opt in and claim a portion of the settlement fund.[2]

2.      After the *Nave* settlement, ABC reclassified the Store Manager position from salaried-exempt to non-exempt hourly. Having been reclassified as non-exempt, Store Managers were entitled to overtime compensation when they worked over 40 hours in a workweek.

3.      In March 2019, the undersigned counsel notified counsel for ABC that it had been contacted by a number of the newly reclassified, now non-exempt, hourly Store Managers, who advised that after ABC reclassified them to hourly, the company required them to work off the clock without compensation. These individuals retained SLG to pursue their claims for unpaid wages.

4.      For the next two months, the undersigned counsel and ABC's counsel discussed the possibility of resolving the claims of the putative class of hourly Store Managers. The parties could not reach a resolution.

---

[2] The *Nave* agreement can be made available to the Court for review.

5.      On May 20, 2019, SLG filed *Hardney, et. al. v. ABC Phones of North Carolina, Inc.*, Case No. 1:19-cv-12722, in the United States District Court for the District of New Jersey ("*Hardney* Action") on behalf of "non-exempt, hourly Store Managers employed by ABC at any time from the later of May 20, 2016 or the date on which Defendant reclassified its Store Manager position from exempt to hourly, non-exempt" to the entry of judgment the *Hardney* Action.

6.      To date, in addition to the three named plaintiffs, 37 Opt-In Plaintiffs have joined the *Hardney* Action, alleging that ABC required them to perform work off the clock during their employment as Store Managers, and as a result, Defendant filed to pay them the full extent of their overtime compensation.

7.      In the *Hardney* Action Plaintiffs assert that they: (a) performed work before they clocked in and after they clocked out; (b) worked during uncompensated lunch breaks; (c) attended uncompensated conference calls before and after their shifts and on days off; (d) reviewed and responded to work related e-mail when they were off the clock and not at work; and (e) communicated with the corporate office, their supervisors, and stores regarding work-related tasks when they were off the clock.

8.      In response to *Hardney* complaint, ABC filed a Motion to Transfer the *Hardney* action to the Western District of North Carolina, and to dismiss the action for failure to state a claim, which has been fully briefed and is pending.[3]

---

[3] Despite asserting that some of the *Hardney* plaintiffs may have signed arbitration agreements during their employment. ABC has yet to file a motion to compel arbitration.  The undersigned has made multiple requests for any arbitration agreements its clients signed, but ABC has refused to produce them, and has instead conditioned production of the arbitration agreements on the *Hardney* plaintiffs' agreement that if they sought conditional certification, notice of the action would only issue to members of putative class who did sign arbitration agreements.  The *Hardney* plaintiffs maintain that ABC's refusal to produce the arbitration agreements constitutes

9.      About a month after the *Hardney* Action was filed, the instant action ("*O'Bryant* Action") was filed.  In the initial Complaint in the *O'Bryant* action, the plaintiffs sought unpaid wages on behalf of current and former ABC employees who worked in ABC's retail stores and were paid an hourly wage plus commission. Dkt. # 1 at ¶ 4.  Plaintiffs alleged that ABC failed to include commissions and non-discretionary bonuses in the hourly employees' regular and overtime rates of pay, thereby depriving them of the full extent of the premium pay they should have received for the overtime work they performed. *Id.* at ¶¶ 18-21.

10.     The initial Complaint in *O'Bryant* contained **no allegations whatsoever** regarding ABC's failure to compensate employees for "off the clock" work, as alleged in the *Hardney* Action.   Rather, the initial Complaint in *O'Bryant* was only that ABC miscalculated the overtime premium that had been paid to hourly compensated employees.

11.     While actively litigating *Hardney*, ABC moved with alacrity in *O'Bryant*, reaching a quick settlement.

12.     Instead, on September 9, 2019, as part of a settlement, the *O'Bryant* Plaintiffs filed an Amended Complaint which included "off the clock" allegations for the first time.  Dkt. # 12 at ¶¶ 27-30.  On the same day, Plaintiffs' Counsel filed a Notice of Settlement and Joint Motion for Settlement Approval. Dkt #s 13, 14.

13.     The Motion for Settlement Approval indicates that the plaintiffs and ABC have resolved the action for the gross amount of $1,525,000.00 for current and former non-exempt employees of ABC who worked as Store Managers and various hourly-non-manager positions between June 10, 2016 and September 9, 2019.  Dkt # 14-1 at 4.1.  The settlement fund available to the class members after deducting $20,000.00 for service awards, and $442,250.00 for

---

a waiver of its right to compel arbitration.

attorneys' fees and costs, is $1,062,750.00.  In total, the settlement covers approximately 15,842 individuals. *Id.* at ¶ 1.2. As a result, on average, each class member will recover an average of sixty-seven dollars and .08 cents ($1,062,750.00/15,842=**$67.08**).

14.     The proposed *O'Bryant* settlement is objectionable.  Several red flags are indicia of a reverse auction whereby claims are settled with the parties/firm willing to take the lowest amount.  What is most troubling is in exchange for the nominal sum of $67.08 they will each receive on average, the *O'Bryant* Plaintiffs and the putative collective class members will release "all known and unknown claims arising under federal and/or applicable state and local law relating in any way to the payment or non-payment of regular or wages or compensation…including, without limitation, all state and federal claims for miscalculated and/or unpaid overtime wages" between June 10, 2016 and September 9, 2019.

15.     In other words, in exchange for being compensated for the relatively small sum based on the miscalculation of their premium overtime, Plaintiffs and the class members will also be release all of their overtime claims, ***including the off the clock claims which are worth significantly more.***  For this nominal consideration, ABC will obtain as many releases as possible (and moots as many claims as possible, including those of any *Hardney* plaintiffs who receive the checks), because the settlement agreement provides that checks will be mailed ***with*** the settlement notices, and upon cashing the checks, the class members will release their claims. This is in contrast to the *Nave* settlement in which the class members were first provided a notice of the settlement, and if they so chose, they could sign and return a claim form to obtain a portion of the settlement fund.

16.     The *O'Bryant* settlement notice also does not inform the Store Manager class members of *Hardney* action for off the clock work.  Obviously, Plaintiffs' and counsel for ABC

was aware of the *Hardney* action, having mentioned it (in passing) in page 4 of the Motion for Settlement Approval. *See* Dkt. #14. at p.4, fn 3. But instead of notifying the undersigned of the settlement negotiations, counsel for both Plaintiffs and Defendant in *O'Bryant* sought to obtain approval of this settlement, and mooting the claims of *Hardney* putative class members without the undersigned's knowledge.

17. In the *O'Bryant* Action there has been no discovery with respect to the off the clock claims to justify this low settlement amount. Although Plaintiffs filed their initial Complaint on June 10, 2019, alleging only unpaid overtime claims based on miscalculation of their overtime, Defendant did not file an answer, or any other response to the Complaint. Instead, Plaintiffs and Defendant mediated on August 21, 2019 and reached a settlement. Only after the mediation was an Amended Complaint alleging "off the clock" claims conveniently filed on the same day as the Motion for Approval of Settlement which almost exclusively provided consideration for the miscalculation claim, but required a release of all unpaid wage claims in return. Clearly the off the clock claims were added to the Amended Complaint to legitimize the overly broad release to moot almost 16,000 individuals' wage claims for the nominal consideration provided in the settlement agreement.[4]

18. Noticeably missing from the Motion for Settlement Approval is any detail or explanation as to how the parties determined that the $1,525,000.00 was sufficient to compensation the class members for both their miscalculation *and* "off the clock" claims. There is no explanation of: (a) the average hours they worked off the clock; (b) the average

---

[4] In fact, in their Motion for Settlement Approval, the parties do not discuss any electronically stored information (ESI) or written discovery being obtained, nor any sampling of time records being done, or depositions taken. Yet, they request that the Court approve the mooting of the valuable claims of almost 16,000 class members by allowing the class members to unknowingly endorse a settlement check without being advised of another action in which their potential claims are being pursued.

commissions they earned; (c) the total damages associated with failure to properly calculate the overtime rate which was the only violation pled in the original complaint; (d) the total damages associated with the "off-the-clock" claims added to the *O'Bryant* allegations on the day approval was sought (e) their average hourly rates; (f) the number of weeks they worked; (g) what the potential damages were based on these factors; and (h) how much the parties compromised and the basis for such compromise to arrive at the settlement fund.  Without this information, neither the Court nor the class members can determine whether the proposed settlement is fair and reasonable.

19.    The complete absence of any detail regarding how the settlement amount was calculated is easily explained:  there was absolutely no discovery in *O'Bryant* about the extent of off the clock hours worked by the putative class because **it was never alleged**. After determining the damages associated with the claims alleged in *O'Bryant* -- the miscalculation of the overtime premium -- it appears that ABC demanded the release to be  expanded to extinguish the *Hardney* Action as a condition of *O'Bryant* settlement. ABC's strategy was to foreclose the substantial liability it faces in *Hardney* by including nominal checks in *O'Bryant* and hoping that collective class members unwittingly cash the check, thereby extinguishing their claims.

20.    All of these indicia demonstrate that the release of the off the clock claims alleged in *Hardney* was a condition of the *O'Bryant* settlement.   One, the scope of the claims in *O'Bryant* did not even include off the clock claims until after the parties negotiated a settlement. Two, the settlement in *O'Bryant* suggests only token consideration for the release of the off the clock claims.  Three, the *O'Bryant* settlement attempts to impair the claims in the first-filed *Hardney* case, without any participation by the *Hardney* Plaintiffs or their counsel,

notwithstanding the fact that ABC was vigorously defending the *Hardney* Action where the off-the-clock claims originally were asserted.

21.     Before filing the instant Motion, the undersigned advised all counsel of record in this action of its intent to intervene in this action, and counsel for the Plaintiffs in *O'Bryant* requested that the undersigned suggest some potential solutions. The undersigned proposed a number of potential ways to resolve the issue including, that each Store Manager in the *O'Bryant* action only be sent a Notice and a claim form, but **not** have a check enclosed with their Notice, and that parties agree to a Notice which would inform Store Managers of the *Hardney* litigation and counsel pursuing that litigation.  This would make the Store Managers aware that there is an avenue to pursue their off-the-clock claims, and that they have an opportunity to speak with counsel who can review with them their potential damages so they may make a knowing decision instead of unknowingly waiving them for literally no consideration compared to what they are worth.  Defense counsel indicated it would oppose any effort to intervene, and had no interest in attempting to resolve this issue. Plaintiffs' Counsel advised that although they do not concede intervention is appropriate, they are amenable to the Court being made aware of the undersigned's concerns, and the Court tailoring the Notice process as the Court deems just to address the concerns.

22.     Courts review FLSA and class settlements to ensure they are "fair and reasonable" and that employers do not take advantage of workers.  Settlements which thwart this goal are to be rejected.  *See Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1322 (S.D. Fla. 2007) (declining to approve settlement where the court could not ignore "the perception . . . that [defendant] selected counsel confronted with a most precarious position, insisted upon amendments to the pleading to broaden the scope of this litigation to obtain a global peace, and

then proceeded to offer and convince Class Counsel to accept highly undesirable terms to settle the case."); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 399 (C.D. Cal. 2007) (preliminary approval denied where the court "[could not] avoid the conclusion that the process by which [the settlement] was reached is strikingly similar" to a reverse auction); *Cullan & Cullan LLC*, 2014 WL 347034, at *10 ("In light of its timing, the pendency of other actions, the size of the class, the amount of the settlement and some 'red flags' that could be signs of potential abuse or collusion, the court finds that the parties' motion for preliminary approval should be denied at this time.").

23.    Defendant is seeking to thwart the FLSA's goals by requesting that the Court approve of the class members releasing all of their wage and hour claims in exchange for a mere $67.08,[5] when their claims are worth much more.  In paragraph 29 of the Amended Complaint, the *O'Bryant* Plaintiffs allege that "… hourly-paid Store Managers performed these tasks [off the clock] *in excess of an hour per week*. Dkt # 12 at ¶¶ 28-29.  The lowest hourly rate a Store Manager was paid in the *Hardney* matter is $13.36. Assuming just one of these Store Managers performed 1 hour of unpaid overtime work in a week work, he/she would be owed $20.04 (time and a half of $13.36) for just one week.  But ABC is proposing that these Store Managers release *all of their overtime claims* in exchange for what would be the equivalent of approximately *3.3 hours off the clock work for the entire time they were employed as hourly Store Managers,* when the *Hardney* plaintiffs contend they worked in excess of  three hours of off the clock work *each week.*   This calculation does not factor in the settlement amount associated with

---

[5] Intervenors anticipate that ABC will show that some collective class members may receive more than this amount, while others may receive less.  However, based upon undersigned counsel's investigation and analysis of the off the clock claims, the undersigned believes the off the clock claims represent an average thousands of dollars per person in damages.  By way of example, if a collective class members had merely two hours per week of off the clock for just one year, this would be tantamount to $2,084.16 in off the clock damages (using the $13.36 regular rate and $20.04 overtime rate which are the low end of the Store Manager pay rates in the *Hardney* action).

miscalculation of overtime wages so the off-the-clock claims are even further diluted and not provided sufficient value through this settlement. *See* fn 5.

24.     Prior to filing this Motion to Intervene, undersigned counsel conferred with counsel for the plaintiffs in the *O'Bryant* Action, who stated that without conceding that intervention is appropriate, the plaintiffs in the *O'Bryant* Action  are open to the Court being made aware of the  concerns of the plaintiffs in the *Hardney* Action, and if necessary, the Court tailoring the Notice process as the Court deems just to address the concerns raised in this Motion.

## II.   ARGUMENT

### A.   The Court Should Permit Intervenors to Intervene in this Action.

Rule 24(a) of the Federal Rules of Civil Procedure grants the right to intervene, "[o]n timely motion," to any individual that "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Under Federal Rule of Civil Procedure 24(a)(2), the *Hardney* Intervenors are entitled to intervene in this action as a matter of right to protect their rights and interests and those of the collective class they seek to represent.

Rule 24 is to be broadly construed in favor of Intervenors. *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000).  In order to demonstrate entitlement  to intervention as of right under Rule 24(a), Intervenors are required to show (1) that their motion to intervene was timely; (2) that they have a substantial legal interest in the subject matter of the pending litigation; (3) that the disposition of the action might impair or impede their ability to protect their legal interest absent intervention; and (4) that the parties to the litigation may not adequately represent their interest. *Id*. at 471; *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990).  In ruling on a motion to intervene, "a district court is required to accept as true

the non-conclusory allegations made in support of an intervention motion." *Parkwest Dev., LLC v. Ellahi*, No. 18 Civ. 10385, 2018 U.S. Dist. LEXIS 128988 (E.D. Mich. Aug. 1, 2018) (quoting *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001) (citing cases reflecting the "unanimous precedent of our sister circuits that have considered the issue")).

With this Motion, the *Hardney* Intervenors satisfy all four of the requirements. Accordingly, the Motion to Intervene should be granted.

## 1.   **Intervenors' Application Is Timely.**

Timeliness of a motion to intervene is evaluated in the context of all relevant circumstances, including the following considerations:

> (1) the   point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Midwest Realty Mgmt. Co. v. City of Beavercreek*, 93 Fed. Appx. 782, 786 (6th Cir. 2004) (citations omitted).   The time between the filing of the complaint and the motion to intervene, in itself, is among the **least** important circumstances. *Stupak-Thrall*, 226 F.3d at 475. What is more critical is the progress made in discovery and motion practice during the course of the litigation. *Id*.

When intervention is sought to object to a settlement, the mere pendency of settlement negotiations cannot be deemed to trigger such awareness; only notice of objectionable terms in a proposed settlement will ordinarily suffice. *See Beckert v. TPLC Holdings, Inc. (In re Telectronics Pacing Sys.)*, 221 F.3d 870, 882 (6th Cir. 2000); *see also United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (motion to intervene timely where proposed

intervenors filed as soon as settlement terms "contrary to their interests" that were agreed to through confidential mediation became public); *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 314 (3d Cir. 2005) (intervention motion filed by class member within time period to opt out of settlement "presumptively timely"); *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 880 (7th Cir. 2000) ("Only when the class members suspect that the representative is not acting in their best interests is there a need to intervene. This means that delay must be measured from the time the would-be intervenors learned (or should have known) of the representative's shortcomings.").

Here, Plaintiffs' Motion to Intervene is timely.  One, the *O'Bryant* litigation is in its infancy, with the Defendant having not even filed an answer, and no discovery has occurred. Two, intervention is sought for the sole purpose of objecting to the proposed *O'Bryant* settlement, which will have a direct impact on the *Hardney* Intervenors' claims.   Three, the *Hardney* Intervenors s just recently became aware of the *O'Bryant* settlement on September 24, 2019.  Four, there is no prejudice to either the *O'Bryant* Plaintiffs or the Defendant.  Rather, the Defendant, who has been actively litigating against the Intervenors in the *Hardney* case, never advised that they were attending mediation, nor that a settlement was reached in *O'Bryant*, although the settlement sought to impair the rights of the plaintiffs in *Hardney*.  Five, given these circumstances, the conduct of Defendant's counsel is dubious at best, thereby constituting an "unusual circumstance" further supporting the timeliness of the motion to intervene.

## 2.   Intervenors Have a Substantial Legal Interest in the Subject Matter of the *O'Bryant* Litigation

The *Hardney* Intervenors assert a substantial legal interest in the *O'Bryant* settlement. There is no clear definition of what constitutes a litigable "interest" for purposes of intervention under *Fed.R.Civ. P. 24*(a)(2). *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987).  The

Supreme Court has noted that "what is obviously meant [by Fed. R. Civ. P. 24(a)(2)] is a significantly protectable interest." *Donaldson v. United States*, 400 U.S. 517, 532, 91 S. Ct. 534, 543, 27 L. Ed. 2d 580 (1971). Similarly, the Sixth Circuit has required a "direct, substantial interest" in the litigation, which must be "significantly protectable." *Jansen v. City of Cincinnati*, 904 F.2d 336, 341 (6th Cir. 1990). The Sixth Circuit has opted for an expansive notion of the interest sufficient to invoke intervention of the right. *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997).

In the instant case, the proposed *O'Bryant* settlement seeks to settle the off-the-clock claims of the *Hardney* plaintiffs and putative collective class, clearly giving the *Hardney* Intervenors a substantial interest in the settlement approval before the Court. This interest is even more pronounced given that the initial Complaint in *O'Bryant* fails to allege any off-the-clock claims. Dkt. No. 1. Only after Plaintiffs and Defendants settled were any "off the clock" allegations asserted in an Amended Complaint that was filed on the same day as the Motion for Approval Settlement. *See* Dkt. # 12 at ¶¶ 27-30. This was clearly in an effort to legitimize the broad release that Plaintiffs and the class members would give in exchange for the nominal settlement amount they would obtain. The *O'Bryant* proposed settlement attempts to impair the claims of the *Hardney* plaintiffs and collective class which by definition constitutes a significant interest. *Koike v. Starbucks Corp.*, 602 F. Supp. 2d 1158, 1160-61 (N.D. Cal. 2009) (ability to pursue claims on a classwide basis significantly protectable interest).

### 3. The *O'Bryant* Settlement Would Impair or Impede the *Hardney* Intervenors' Ability to Protect Their Legal Interests Absent Intervention.

The burden to show an impairment of a legally protected interest is light and requires the intervenor to show only that impairment of his interest is *possible* if intervention is denied. *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999). Because it seeks to include the off-the-

clock claims of SMs within its parameters, the *O'Bryant* settlement unquestionably would impair the legal interests of the *Hardney* plaintiffs and collective class.

### 4.   The *Hardney* Intervenors' Interests Are Not Adequately Represented by *O'Bryant.*

As the Sixth Circuit explained:

> The proposed intervenor's burden in showing inadequacy is "minimal." *See Trbovich v. United Mine Worker*s, 404 U.S. 528, 538 n. 10, 92 S. Ct. 630, 30 L. Ed. 2d 686 (1972); *Linton ex rel. Arnold v. Comm'r of Health & Env't.*, 973 F.2d 1311, 1319 (6th Cir. 1992). "The proposed intervenor need show only that there is a potential for inadequate representation." *Grutter*, 188 F.3d at 400 (emphasis in original). "[I]t may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Id*. "If the interest of the absent party is not represented at all, or if all existing parties are adverse to the absent party, then she or he is not adequately represented." *Grubbs*, 870 F.2d at 347. "An interest that is not represented at all is surely not adequately represented, and intervention in that case must be allowed." *Id*.

*Davis v. Lifetime Capital, Inc*., 560 Fed. Appx. 477, 595-96 (6th Cir. 2014). Here, the *O'Bryant* settlement is adverse to the interests of the *Hardney* Plaintiffs because it seeks to impair their claims with little or no consideration. The *O'Bryant* provides for the average of a mere $67.08 in consideration for a full release of all wage and hour claims by any individual who cashes a settlement check. This consideration barely compensates a Store Manager for 3 hours of off the clock work during his/her ***entire employment as an hourly Store Manager***,  It represents even less than 3 hours when considering that the majority of the damages provided for by the settlement is due to the allegation in the original complaint that the overtime rate was mis-calculated on certain weeks. The off the clock claims are valuable and we anticipate discovery demonstrating that they are worth thousands of dollars on average per store manager and should not be waived by the broad release sought here.

5.      **The Proposed _O'Bryant_ Settlement is Tantamount to a Reverse Auction**.

The proposed settlement in *O'Bryant* smacks of a reverse auction.  The proposed notice does not adequately apprise potential class members of the pendency of the *Hardney* action for "off the clock" claims.  The proposed notice makes no mention of the *Hardney* action.  Instead, the only mention of *Hardney* is in footnote 3 on page 4 of the Motion for Settlement Approval (which no class member will ever see) in reference to Defendant's intention to move to compel arbitration if the settlement is not approved.  Dkt. # 12 at ¶ 4.  The notice does not provide Intervenors'' counsel's contact information or explain that *Hardney* has been pled as a nationwide collective action that seeks to assert the claims being released in *O'Bryant*, or provide any information that would allow class members to make an informed decision about whether to accept a meager recovery or to pursue their claims elsewhere. Intervenors respectfully request that the notice be amended to include language such as the following for all class members who worked as hourly Store Managers during the relevant liability period:  "Please be aware that because you worked as an hourly Store Manager, your claims for overtime pay and related violations may be covered by the pending *Hardney v. ABC Phones of North Carolina, Inc.* collective action.  It is Case No. Case No. 1:19-cv-12722, pending in federal court in the District of New Jersey.  The lawyers representing the plaintiffs and proposed class members in that case are Shavitz Law Group, P.A., and they can be reached at (561)447-8831 or info@shavitzlaw.com.  You can contact them to help determine whether you prefer to accept the settlement payment being offered here, or opt into the *Hardney* action and attempt to recover more damages there."

Given this posture, the Proposed Notice and Settlement has all the indicia of a classic reverse auction – a win-win-lose, wherein the defendant gets releases at an artificially depressed

price, counsel in the inferior bargaining position can salvage a significant fee from a disastrous position (leveraging the position of other counsel in another, better-situated case), and the class members lose. *See Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 282 (7th Cir. 2002) (describing a reverse auction as "the practice whereby the defendant in a series of class actions negotiate[s] a settlement . . . in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant"); Rubenstein, Newberg on Class Actions § 13:57 (5th ed.) (the primary "problem in the reverse auction situation is that the class's interests have been sold out, and class members will get less than the full value of their claims"). For obvious reasons, courts are reluctant to approve proposed class settlements under these circumstances. *See Reynolds*, 288 F.3d at 283 ("questionable antecedents and circumstances" of settlement proposal "demand[] closer scrutiny").

By seeking approval of a settlement that extinguishes the *Hardney* off the clock claims – again, claims not even asserted in the *O'Bryant* Action – ABC is attempting to obtain the Court's imprimatur for its dubious conduct. Essentially, ABC created a liability for itself by having Store Managers to work off the clock without compensation after it reclassified the position. Rather than addressing that liability in the *Hardney* Action, it vigorously defended that case while simultaneously seeking to extinguish that liability through the proposed settlement in *O'Bryant*. ABC's conduct should not be countenanced and the Court should not be manipulated into approving the proposed settlement in *O'Bryant* without full knowledge of the deleterious impact the scope of that settlement would have on the *Hardney* Plaintiffs and collective class. Accordingly, intervention is necessary to protect the interest of the *Hardney* Plaintiffs and collective class – whose interests clearly are unrepresented here – and to fully advise the Court of the *Hardney* Plaintiffs' interests.

16

6.      **The Proposed Notice Does Not Provide Class Members Accurate Information to Make Informed Decisions Regarding the Settlement and Their Rights**

The proposed notice in *O'Bryant* obscures details critical to evaluating the adequacy of the settlement; for instance: (1) how many workweeks are at issue in each class position? (2) how much money does the settlement provide per week per type of class member? (3) how did the parties reach their damages assumptions and exposure analysis? (4) what discovery, if any, was done into both the commission factoring and "off the clock" claims to determine their strength and value before approving the settlement?   Instead of utilizing the misleading notice process proposed in *O'Bryant*, the more appropriate approach would be as the settlement structure employed in the *Nave* action in which settlement notices were mailed to all the class members advising them of the amount available for them to claim, and the scope of the release associated with the damages they were being offered.  The class members had 90 days to decide whether they wished to participate in the settlement, and if they so chose, they would submit the claim form..  In contrast, this *O'Bryant* settlement will provide a settlement notice with a check, hoping that the class members instinctively cash the check because it is available, completely oblivious to the fact that they have released all of their claims for unpaid wages in exchange for significantly less consideration than their claims were worth.

To the extent any Notice goes out, the Court should include the safeguards that a check **not** be enclosed, but rather the Notice revised with input from undersigned counsel.  This will ensure that for any opt-ins who would be included in the *Hardney* Action are aware of the pendency of that Action so that they are fully informed before compromising their off the clock claims.  To that end, the notice in *O'Bryant* should also the contact information of *Hardney's* undersigned counsel, and that if any opt-ins have questions about the damages being sought in

*Hardney* compared to the relief offered in *O'Bryant*, they can contact counsel to review their rights.

## III.    CONCLUSION

For all the foregoing reasons, the Motion to Intervene should be granted.

Dated: September 27, 2019                  Respectfully submitted,

*/s/ Gregg I. Shavitz*
Gregg I. Shavitz (pro hac vice application forthcoming)
gshavitz@shavitlzlaw.com
**SHAVITZ LAW GROUP, P.A.**
951 Yamato Road, Suite 285
Boca Raton, Florida 33431
Tel:    (561) 447-8888
Fax:    (561) 447-8831
***Attorneys for Intervenors***

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system this the 27th day of September 2019.

*/s/ Gregg I. Shavitz*
Gregg I. Shavitz