IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| JACOB O'BRYANT and MARK BRANDON BAKER, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 19-cv-02378-SHM-tmp |
| v. | ) ) | JURY DEMAND |
| ABC PHONES OF NORTH CAROLINA, INC. d/b/a VICTRA, f/d/b/a A WIRELESS, | ) ) ) ) | |
| Defendant. | ) | |

**ORDER DENYING INTERVENTION AND GRANTING PRELIMINARY APPROVAL OF AMENDED SETTLEMENT**

Plaintiffs bring this action under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"). Before the Court are three motions. The first is the August 14, 2020 Joint Motion for Settlement Approval—Preliminary Approval of Amended Settlement (the "Joint Motion"). (D.E. No. 71.) That motion is brought by Plaintiffs Jacob O'Bryant and Mark Baker (collectively, "Plaintiffs" or "Named Plaintiffs") and Defendant ABC Phones of North Carolina, Inc., d/b/a VICTRA, f/d/b/a A Wireless ("VICTRA"). The second is a Motion to Intervene (the "Hardney Motion"), filed on August 18, 2020, brought by Ron Hardney, Manuel Panngasiri, and Michelle Salway, along with seventy-six other opt-in plaintiffs in the Hardney

action, <u>Hardney, et al. v. ABC Phones of North Carolina, Inc.</u>, No. 20-cv-0076 (the "<u>Hardney</u>" Action"). (D.E. No. 72.) The third is a Motion to Intervene (the "Motion to Intervene"), filed on September 9, 2020, brought by Priscilla Solorio and Mariano Diaz (the "Putative Intervenors"), named plaintiffs in <u>Solorio, et al. v. ABC Phones of North Carolina, Inc.</u>, No. 1:20-cv-01051-NONE-JLT (the "<u>Solorio</u>" Action"). (D.E. No. 78.)

The <u>Hardney</u> Motion is DENIED AS MOOT. The Motion to Intervene is DENIED. The Joint Motion is GRANTED.

## I.   Background

This dispute arises from VICTRA's alleged failure to pay overtime compensation to certain employees. VICTRA sells Verizon-compatible phones, Verizon data plans, and cellular phone accessories through VICTRA-branded locations. (Second Amended Complaint, D.E. No. 67 ¶ 12.) VICTRA sets wage and hour policies, including employees' overtime pay, commission pay, and overtime rates. (<u>Id.</u> ¶ 15.) VICTRA compensates its retail associates by paying an hourly rate plus bonuses and commissions, which are paid according to frequently adjusted formulas. (<u>Id.</u> ¶ 16.) The commission payments and/or non-discretionary bonuses are not included in the employees' regular rate when overtime payments are calculated. (<u>Id.</u> ¶ 21.)

On June 10, 2019, Plaintiffs filed a Complaint in this action (the "Initial Complaint"). (D.E. No. 1.) In their

2

Initial Complaint, Plaintiffs, VICTRA retail sales associates employed on an hourly-plus-commission basis, alleged that VICTRA employed a uniform payment structure for its retail sales associates that violated the FLSA. (Id. ¶¶ 8, 9, 34-39.) Plaintiffs alleged that VICTRA's payment scheme calculated the amount of overtime due by using the employees' base hourly rate rather than the regular rate as defined by 29 C.F.R. § 778.114, which required including commission payments and non-discretionary bonuses when calculating overtime. (See id. ¶¶ 19-21.) The collective action described in the Initial Complaint was:

> All current and former retail employees of ABC Phones of North Carolina, Inc. or any of its subsidiaries doing business as VICTRA, who were paid an hourly wage plus commission, and who were employed in the United States at any time during the applicable limitations period covered by this Collective Action Complaint (i.e. two years for FLSA violations and, three years for willful FLSA violations) up to and including the date of final judgment in this matter, and who are Named Plaintiffs or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b).

(Id. ¶ 4.)

On September 9, 2019, Plaintiffs filed a First Amended Complaint (the "FAC"). (D.E. No. 12.) In the FAC, Plaintiffs, inter alia, changed Baker's job description from "retail sales person" to "store manager." (Compare D.E. No. 1 ¶ 9, with D.E. No. 12 ¶ 11.) The FAC stated a separate retail "manager[]"

subcollective, in addition to the Initial Complaint's retail "employee[]" collective:

> All current and former retail managers of ABC Phones of North Carolina, Inc. or any of its subsidiaries doing business as VICTRA, who were paid an hourly wage plus commission, and who were employed in the United States at any time during the applicable limitations period covered by this Collective Action Complaint (i.e. two years for FLSA violations and, three years for willful FLSA violations) up to and including the date of final judgment in this matter, and who are Named Plaintiffs or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b).

(See D.E. No. 12 ¶ 4).

The FAC alleged an additional violation of the FLSA: VICTRA's failure to pay its retail managers for work performed "off-the-clock." (Id. ¶¶ 23, 26-29.) Plaintiffs alleged that VICTRA "converted its salaried store managers to hourly paid employees but did not substantially alter the work that such store managers, including [] Baker, were required to perform outside of their shifts"; that "store managers were not told that they should or could clock-in to complete work performed off-premises"; that these tasks included "participating in mandatory conference calls scheduled outside of manager's shifts; responding to employee calls after work, before work, and on days off; responding to employee text messages; and routinely checking and responding to issues brought up in group.me[]." Plaintiffs alleged that these tasks were performed "in excess of an hour per week." (Id. ¶¶ 26-29.)

4

Also on September 9, 2019, the parties filed a Motion for Settlement Approval. (D.E. No. 14.) On July 3, 2020, the parties filed a joint motion for Approval of First Amendment to Settlement and Release Agreement to Provide Further Benefits to the Store Manager and Non-Manager Classes. (D.E. No. 58.) On August 4, 2020, the Court denied both motions. (D.E. No. 66.) The Court's reasons are summarized as follows:

- The opt-in procedures were statutorily deficient in that merely cashing a check was not equivalent to filing a written notice with the Court (Id. at 843-47);

- The agreement requested that the Court dismiss the action before the opt-in plaintiffs had joined the action (Id. at 847-52);

- The parties failed to provide sufficient information for the Court to evaluate the settlement amount and the individual settlement payments (Id. at 852-55);

- The general release was overbroad and applied to all potential plaintiffs (Id. at 855-858);

- There were "subtle signs" that the attorneys' fees included in the settlement were not reasonable. (Id. at 858-65.)

On August 11, 2020, the Plaintiffs filed a Second Amended Complaint ("SAC"), which is the operative complaint. (D.E. No. 67.) The SAC adds an allegation that the off-the-clock claims apply to the non-manager sub-class as well as the manager sub-class. (Id. ¶ 30.)

Also on August 11, 2020, the parties filed a Stipulated Motion for Conditional Certification of the Collective Encompassed by the Parties' Settlement. (D.E. No. 68.) That motion defined the collective as:

> Current and former non-exempt employees of VICTRA who worked as store managers and non-manager retail employees who worked in any VICTRA-owned store in the United States at any time between June 10, 2016, and August 7, 2020.

(Id. at 887.) The parties asked the Court to conditionally certify the defined collective. (See id.) The Court granted that relief on October 15, 2020. (D.E. No. 87.)

On August 14, 2020, the parties submitted the Joint Motion. (D.E. No. 71.) The parties seek preliminary approval of the settlement and approval of the opt-in procedures. (See id. at 921.) The parties represent that, at a mediation on August 21, 2019 (the "Mediation"), they were able to settle the managers' claims. (Id. at 895.) The parties represent that, in the weeks after the Mediation, they were able to reach an agreement to settle the retail employees' claims. (Id. at 896.) In preparation for the Mediation, the parties represent that they "conducted informal discovery" that led to VICTRA's production of "over 400,000 payroll records containing 24 variables related to the Named Plaintiffs and putative members of the collective" and containing "hours and wage information spanning more than three years of pay periods, including

6

regular hours and pay, overtime hours and pay, commissions and special incentive payments, extra unearned overtime payments, and other payroll components." (Id. at 894-95.)

The Joint Motion is accompanied by an Amended Settlement Agreement. (D.E. No. 71-1.) The settlement amount payable to the opt-in plaintiffs is $1,400,576.40, which does not include the Service Awards to the Named Plaintiffs, the Plaintiffs' attorneys' fees, and the Administration Fee (payable to the Settlement Administrator). (Id. at 929.) The parties represent that the following changes to the original settlement agreement resolve the Court's prior concerns with the settlement:

- Two-Step Approval. The Amended Settlement Agreement provides for a two-step approval process, in which the Parties first seek preliminary approval of the settlement, after which notice will be sent to Potential Opt-In Plaintiffs. After all Opt-In Plaintiffs have joined the collective action, the Parties will then seek final approval of the settlement. Under this two-step process, neither the limited release applicable to Opt-In Plaintiffs nor the dismissal of the action would become effective until the Court issues a Final Approval Order.

- Notice. The Amended Settlement Agreement provides that the notice to Potential Opt-In Plaintiffs will inform them of the minimum estimated settlement payment they will receive if they opt-in to the settlement and the settlement receives final approval from the Court. Such notice also informs the Potential Opt-In Plaintiffs of the limited scope of the release that will bind them if they opt in to the settlement and provides them with a Consent Form they can complete and submit to become Opt-In Plaintiffs.

- <u>Consent Forms.</u> The Amended Settlement Agreement provides for the Potential Opt-In Plaintiffs to complete and submit opt in Consent Forms either electronically or by mail, which will be subsequently filed with the Court. This mechanism ensures that all the Opt-In Plaintiffs are properly before the Court prior to the Court granting final approval of the settlement.

- <u>Payment after Opt-In Process.</u> The Amended Settlement Agreement provides for settlement checks to be issued to Opt-In Plaintiffs after their written Consent Forms have been filed with the Court and after entry of a Final Approval Order. As stated, prior to issuance of settlement checks, the minimum estimated amount of the individual settlement compensation will have already been disclosed to each Opt-In Plaintiff on the Notice distributed to each.

- <u>The Releases.</u> The scope of the release applicable to Opt-In Plaintiffs in the Amended Settlement Agreement is limited to only claims arising under the FLSA that relate to the payment or non-payment of (1) overtime wages, including the calculation of overtime wages, or (2) compensation for off-the-clock work as asserted in the Second Amended Complaint. As explained below, this language makes clear that the Released Claims share a factual predicate with the allegations made by Plaintiffs. The Amended Settlement Agreement clarifies that the separate general release executed by the Named Plaintiffs is applicable to the Named Plaintiffs only and does not bind any of the Opt-In Plaintiffs.

- <u>Attorneys' Fees.</u> The Amended Settlement Agreement provides that Plaintiffs' counsel will seek approval from the Court for its Attorneys' Fees and Expenses in an amount not to exceed $442,250, and that any Unapproved Fee Amount shall be divided in two parts, for the Store Manager Collective and the Non-Manager Collective, and such amounts shall be distributed to Opt-In Plaintiffs in accordance with their Pro Rata Share of the Manager Maximum Settlement Amount or the Non-Manager Maximum Settlement Amount.

- <u>More money.</u>  VICTRA has increased the amount of money it is paying to resolve claims by approximately $147,000 (the "Additional Funds"). These Additional Funds allow the Applicable Collective Period to be brought forward from May 2020 to August 7, 2020.

- <u>Base Payments to Every Opt-In Plaintiff.</u>  The Additional Funds also enable every Opt-In Plaintiff to receive a Base Payment of at least $10.00, and at most $25.00, depending on the number of Opt-In Plaintiffs, from a Base Settlement Amount of $213,560.00. This Base Payment is intended to compensate Opt-In Plaintiffs for the time and effort to opt into the settlement, as well as provide additional compensation for potential off-the-clock damages, which are inherently difficult to estimate. Should any portion of the Base Settlement Amount not be paid out in Base Payments, the remaining balance of the Base Settlement Amount will be distributed to Opt-In Plaintiffs in accordance with their pro-rata recoveries from the settlement.

- <u>Revised Calculations.</u>  The Parties have agreed to revised calculations of the amount of money to be provided to Opt-In Plaintiffs. Previously, an Opt-In Plaintiff was required to work a minimum of five days in a week to qualify for payments; under the revised calculations, an Opt-In Plaintiff receives compensation if they worked four days in a week, and qualifies for increased payments the more days he or she worked in a given workweek. These changes reflect that it is more likely for an individual to have a greater potential claim for damages the more days the individual works in a week.

- <u>Cy Pres of Uncashed Checks.</u> The amount of any checks that remain uncashed by Opt-In Plaintiffs shall be donated to a nonprofit charitable organization that benefits VICTRA employees to be identified in the Parties' request to enter the Final Approval Order.

(D.E. No. 71 at 897-99.)

The <u>Hardney</u> Motion was filed on August 18, 2020. (D.E. No. 72.) Counsel for the <u>Hardney</u> Action advised the Court on December 3, 2020, that the <u>Hardney</u> Motion was moot. (D.E. No. 93.)

The Motion to Intervene was filed on September 9, 2020. (D.E. No. 78.) It argues that settlement of this action will impede the Putative Intervenors' <u>Solorio</u> Action. (<u>Id.</u> at 1249.) The Motion to Intervene represents that Putative Intervenors seek to oppose settlement of this action and to have information about the <u>Solorio</u> Action included in any notice to potential opt-in plaintiffs in this action. (<u>Id.</u> at 1250.) VICTRA and Plaintiffs responded to the Motion to Intervene on September 23, 2020. (D.E. Nos. 82, 83.)

## II.  Jurisdiction

Plaintiffs allege violations of the FLSA. The Court has subject matter jurisdiction over FLSA claims under the general grant of federal question jurisdiction in 28 U.S.C. § 1331.

## III. Standard of Review

### A.   Standard for Motions to Intervene

Under some circumstances, the Court must allow any person to intervene in a case as a matter of right; under others, the Court may allow permissive intervention. Fed.R.Civ.P. 24(a)-(b). "[Rule] 24 distinguishes a permissive intervenor from an

intervenor of right by the stake each has in the litigation. The intervenor of right has an interest in the litigation that it cannot fully protect without joining the litigation, while the permissive intervenor does not." Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 381 (1987) (Brennan, J., concurring in part and concurring in the judgment). "Rule 24 should be 'broadly construed in favor of potential intervenors.'" Stupak-Thrall v. Glickman, 226 F.3d 467, 472 (6th Cir. 2000) (quoting Purnell v. Akron, 925 F.2d 941, 950 (6th Cir. 1991)). That "does not mean that Rule 24 poses no barrier to intervention at all." Id. "[A] district court is required to accept as true the nonconclusory allegations made in support of an intervention motion." Parkwest Dev., LLC v. Ellahi, 2018 WL 3640433, at *2 (E.D. Mich. Aug. 1, 2018) (citing Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 819 (9th Cir. 2001)).

Mandatory intervention requires putative intervenors to establish: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court." Stupak-Thrall, 226 F.3d at 471 (citing Mich. State AFL-CIO v. Miller, 103 F.3d 1240, 1245 (6th Cir. 1997), and Grutter

v. Bollinger, 188 F.3d 394, 397-98 (6th Cir. 1999)). A motion for mandatory intervention must be denied if the proposed intervenor cannot satisfy all of the criteria. United States v. Michigan, 424 F.3d 438, 443 (6th Cir. 2005) (citing Grubbs v. Norris, 870 F.2d 343, 345 (6th Cir. 1989)).

"To intervene permissively, a proposed intervenor must establish that the motion for intervention is timely and alleges at least one common question of law or fact." Michigan, 424 F.3d at 445 (citing Mich. State AFL-CIO, 103 F.3d at 1248). "Once [the timeliness and common question of law or fact elements] are established, the district court must then balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." Id. (citing Mich. State AFL-CIO, 103 F.3d at 1248). "[T]he decision whether to grant permissive intervention resides largely in the discretion of the district court." Stringfellow, 480 U.S. at 382 n.1.

**B.   Standard for Collective Actions under the FLSA**

Section 216(b) of the FLSA permits an employee to recover unpaid overtime compensation by suing an employer "in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike class actions under Federal Rule of Civil Procedure 23, when an employee sues his employer in a representative capacity under § 216(b), "similarly situated"

12

plaintiffs choose whether to "opt into" the suit, which is known as a "collective action." O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 583 (6th Cir. 2009), abrogated on other grounds by Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663 (2016); Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006).

To be viable under § 216(b), an FLSA collective action must meet two requirements: (1) the plaintiffs must be "similarly situated"; and (2) all plaintiffs must signal in writing their affirmative consent to participate in the action. Comer, 454 F.3d at 546 (citing 29 U.S.C. § 216(b), and Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 167–68 (1989)). District courts have broad discretion in implementing procedures to ensure that these requirements are met. See Hoffmann-La Roche, 493 U.S. at 169.

This Circuit has approved a two-stage certification process. See, e.g., Frye v. Baptist Mem'l Hosp., Inc., 495 F. App'x 669, 671 (6th Cir. 2012); In re HCR ManorCare, Inc., No. 11-3866, 2011 WL 7461073, at *1 (6th Cir. Sept. 28, 2011); see also Monroe v. FTS USA, LLC, 860 F.3d 389, 397 (6th Cir. 2017) ("Courts typically bifurcate certification of FLSA collective action cases."). At the first stage, pre-discovery, the court may grant conditional certification of the collective action, deciding whether the members described in the pleadings are

13

similarly situated and determining the contour and size of the group of employees that may be represented in the action so as to authorize notice to possible collective members who may want to participate. See Monroe, 860 F.3d at 397 (citing Comer, 454 F.3d at 546). At the second stage -- "after all of the opt-in forms have been received and discovery has concluded" -- the court makes another "similarly situated" determination (traditionally on motion of the defendant for decertification, see Campbell v. City of Los Angeles, 903 F.3d 1090, 1109 (9th Cir. 2018); Wilks, et al. v. The Pep Boys, No. 3:02-0837, 2006 WL 2821700, at *2 (M.D. Tenn. Sept. 26, 2006)), but applies a "stricter standard." Comer, 454 F.3d at 546-47 (quotation marks and citations omitted); see also Frye, 495 F. App'x at 671. If plaintiffs satisfy their burden at this stage, the case may proceed collectively to trial.  See Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001). "If the court concludes that plaintiffs are not similarly situated, it 'decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims." White v. Baptist Mem'l Health Care Corp., No. 08-2478, 2011 WL 1883959, at *4 (W.D. Tenn. May 17, 2011) (citations omitted), aff'd, 699 F.3d 869 (6th Cir. 2012).

To satisfy the "opt-in" requirement of § 216(b), plaintiffs who seek to be parties must file written consents with the court. 29 U.S.C. § 216(b); 7B Charles Alan Wright et al., Federal Practice and Procedure § 1807 (3d ed. 2005) (collecting cases). Unless a plaintiff has opted in by filing a written consent with the court, he or she is not bound by the results of the litigation. Ballaris v. Wacker Siltronic Corp., 370 F.3d 901, 906 n.9 (9th Cir. 2004) (citation omitted); Wright, § 1807; cf. Ware v. CKF Enters., Inc., No. 5:19-183-DCR, 2020 WL 1170223, at *2 (E.D. Ky. Mar. 11, 2020) ("[P]ost-approval filers who are not considered opt-in plaintiffs and will not submit the FLSA opt-in consent forms under the proposed agreement are effectively not part of the collective."); Marichal v. Attending Home Care Servs., LLC, 432 F. Supp. 3d 271, 279 (E.D.N.Y. 2020) (citing Hood v. Uber Techs., Inc., No. 1:16-cv-998, 2019 WL 93546, at *3 (M.D.N.C. Jan. 3, 2019)) ("It is long established that a client must give his consent to settle. . . . [T]he named plaintiff and his counsel in a collective action cannot settle a case on behalf of an opt-in plaintiff: the affirmative assent of each opt-in plaintiff—as a party to the case—is required.").

**C.  Standard for Collective Action Settlements under the FLSA**

The FLSA's overtime compensation provisions are "mandatory and, except as otherwise provided by statute, are generally not subject to being waived, bargained, or modified by contract or by settlement." Kritzer v. Safelife Solutions, LLC, No. 2:10-cv-0729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012) (citing Dillworth v. Case Farms Processing, Inc., No. 5:08-cv-1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010) (citing Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697 (1945))). There are two ways in which claims for back wages under the FLSA can be settled or compromised. Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982). First, the Department of Labor can supervise a settlement. See Collins v. Sanderson Farms, Inc., 568 F. Supp. 2d 714, 719 (E.D. La. 2008) (citing 29 U.S.C. § 216(c)). Second, "[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." Lynn's, 679 F.2d at 1353 (citing Schulte, Inc. v. Gangi, 328 U.S. 108, 113 n.8 (1946)).[1]

---

[1] There is a Circuit split about whether judicial approval is mandated for all types of FLSA settlements. See Barbee v. Big River Steel, LLC, 927 F.3d 1024, 1026 (8th Cir. 2019) (detailing split). This Circuit has not directly addressed the question, but the majority view is that judicial approval is required for FLSA collective action settlements brought under 29 U.S.C. § 216(b). See,

When parties submit a proposed FLSA settlement for a court's review, the court must review the proposed settlement to ensure that it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." Id. at 1355; see also Does 1-2 v. Déjà Vu Servs., Inc., 925 F.3d 886 (6th Cir. 2019), aff'g No. 2:16-cv-10877, 2017 WL 2629101 (E.D. Mich. Jun. 19, 2017) (affirming approval of a settlement of FLSA claims where the district court applied the Lynn's Food Stores test).

Where appropriate, the court preliminarily approves a proposed FLSA collective action settlement, authorizes notice of settlement, and schedules a fairness hearing. See, e.g., Barnes v. Winking Lizard, Inc., No. 1:18-c-952, 2019 WL 1614822, at *1 (N.D. Ohio Mar. 26, 2019); Castillo v. Morales, Inc., No. 2:12-cv-650, 2015 WL 13022263, at *1-2 (S.D. Ohio Aug. 12, 2015); La Parne v. Monex Deposit Co., No. 08-cv-0302, 2010 WL 4916606, at *4-5 (C.D. Cal. Nov. 29, 2010).

"A bona fide dispute exists when there are legitimate questions about 'the existence and extent of [d]efendant's FLSA liability.'" Selk v. Pioneers Mem'l Healthcare Dist., 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (quoting Ambrosino v. Home Depot U.S.A., Inc., No. 11cv1319 (MDD), 2014 WL 1671489 (S.D.

e.g., Steele v. Staffmark Invs., LLC, 172 F. Supp. 3d 1024, 1026-29 (W.D. Tenn. 2016).

Cal. Apr. 28, 2014)). "There must be some doubt . . . that the plaintiffs would succeed on the merits through litigation of their [FLSA] claims." Id. (quotation marks and citation omitted). "A proposed settlement resolves a bona fide dispute when it reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute, rather than a mere waiver of statutory rights brought about by an employer's overreaching." Alvarez v. BI Inc., 2020 WL 1694294, at *4 (E.D. Pa. Apr. 6, 2020) (citations and quotation marks omitted).

The court must find that the settlement is fair and reasonable. See Lynn's, 679 F.2d at 1353. This Circuit has not directly stated the factors courts are to consider in deciding whether an FLSA collective action settlement is fair and reasonable. In analyzing a hybrid class action-collective action FLSA settlement, this Circuit has stated the factors it considers: (1) the risk of fraud or collusion, (2) the complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the opinions of class counsel and class representatives, (6) the reaction of absent

class members, and (7) the public interest.[2] Does 1-2, 925 F.3d at 894-95 (citing Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp. ("UAW"), 497 F.3d 615, 631 (6th Cir. 2007)); see also Fitzgerald v. P.L. Mktg., Inc., No. 2:17-cv-02251, 2020 WL 3621250, at *6 (W.D. Tenn. July 2, 2020).

This Court and other district courts in this Circuit have applied the seven factors in analyzing the fairness and reasonableness of collective action settlements. See, e.g., Fitzgerald, 2020 WL 3621250, at *6; Hawkins v. Accurate Nursing Servs., Inc., No. 5:19-cv-1572, 2020 WL 1031530, at *1 (N.D. Ohio Mar. 3, 2020); Robinson v. Sheppard Performance Grp., Inc., No. 19-cv-12228, 2020 WL 619603, at *2 (E.D. Mich. Feb. 10, 2020); Osman v. Grube, Inc., No. 3:16-cv-00802-JJH, 2018 WL 2095172, at *1 (N.D. Ohio May 4, 2018) (citing Cannon v. Time Warner NY Cable LLC, No. l3-cv-02521-RM-MJW, 2015 WL 4498808 (D. Colo. July 24, 2015)); Crawford v. Lexington-Fayette Urban Cty. Gov't, No. 06-299-JBC, 2008 WL 4724499, at *3, *6-9 (E.D.

---

[2] District courts in this Circuit have stated these factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. See Farkas v. Boschert, 2018 WL 3100905, at *1-2 (E.D. Mich. June 25, 2018) (citing Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

Ky. Oct. 23, 2008). The Court need only consider the factors relevant to this settlement. Snook v. Valley OB-GYN Clinic, P.C., No. 14-cv-12302, 2015 WL 144400, at *1 (E.D. Mich. Jan. 12, 2015) ("A district court may choose to consider only the factors that are relevant to the settlement at hand."). The probability of success on the merits is the most important of the UAW factors. Does 1-2, 925 F.3d at 895.

A court "must not simply rubber-stamp [settlement agreements] as approved." Snook, 2015 WL 144400, at *1; see also Williams v. Alimar Sec., Inc., No. 13-12732, 2016 WL 6405798, at *4 (E.D. Mich. Oct. 31, 2016). "Parties to [a] settlement must proffer sufficient evidence to allow the district court to review the terms and legitimacy of the settlement." UAW, 497 F.3d at 635 (citing In re Gen. Tire & Rubber Co. Sec. Litig., 726 F.2d 1075, 1084 n.6 (6th Cir. 1984)). A court does not have the authority to delete, modify, or substitute certain provisions of a settlement agreement, but rather, the settlement agreement "must stand or fall in its entirety." Smothers v. NorthStar Alarm Servs., LLC, No. 2:17-cv-00548-KJM-KJN, 2019 WL 280294, at *9 (E.D. Cal. Jan. 22, 2019) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)).

Pursuant the FLSA's statutory requirements, in an FLSA collective action, a court will grant a motion for settlement

approval only after finding that: (1) the opt-in plaintiffs are "similarly situated"; (2) the opt-in plaintiffs have properly filed written consents with the court; and (3) the settlement is "a fair and reasonable resolution of a bona fide dispute." See 29 U.S.C. § 216(b); Comer, 454 F.3d at 546; Lynn's, 679 F.2d at 1353.

## IV. Analysis

### A. The Motions to Intervene are denied.

The Hardney Motion is DENIED AS MOOT. (See D.E. No. 93.)

Although the Motion to Intervene is timely, Putative Intervenors cannot overcome the presumption of adequate representation. The Motion to Intervene is DENIED.

### 1.    The Motion to Intervene is timely.

When considering a motion to intervene, "the court where the action is pending must first be satisfied as to timeliness." Nat'l Ass'n for the Advancement of Colored People v. New York, 413 U.S. 345, 365 (1973); see Blount-Hill v. Zelman, 636 F.3d 278, 284 (6th Cir. 2011); see also United States v. Ritchie Special Credit Invs., Ltd., 620 F.3d 824, 832 (8th Cir. 2010) ("The issue of the timeliness of a motion to intervene is a threshold issue.").

The Sixth Circuit considers these five factors when evaluating the timeliness of a motion to intervene:

> 1) the point to which the suit has progressed; 2) the purpose for which intervention is sought; 3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; 4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and 5) the existence of unusual circumstances militating against or in favor of intervention.

Blount-Hill, 636 F.3d at 284 (citing Jansen v. City of Cincinnati, 904 F.2d 335, 340 (6th Cir. 1990)). "No one factor is dispositive, but rather the 'determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances.'" Id. (quoting Stupak-Thrall, 226 F.3d at 472-73).

The Motion to Intervene is timely. The motion was filed within weeks of the Joint Motion. (See D.E. Nos. 71, 72, 78.) The litigation has not progressed to a late stage. Defendant has not filed an answer to the complaint. The litigation has, however, reached the point that there is a proposed settlement for the Court's preliminary consideration. (D.E. No. 71-1.) Intervention for the purpose of contesting a settlement can be untimely because of prejudice to the parties. Bailey v. White, 320 F. App'x 364, 366-67 (6th Cir. 2009) (holding that purpose of intervention to "investigate and evaluate the proposed settlement" was prejudicial to the parties because the "settlement would have been disrupted."). The settlement

Putative Intervenors seek to oppose is different in important respects from the original settlement proposal the Court rejected. (Compare D.E. No. 14-1 at 71-72, with D.E. No. 71-1 at 941-42.) The Joint Motion was the first opportunity for Putative Intervenors to consider whether the terms of the revised settlement were averse to their interests. Heartwood, Inc. v. United States Forest Serv., Inc., 316 F.3d 694, 701 (7th Cir. 2003) ("The relevant inquiry in determining timeliness, however, is not on the time between the settlement and the motion to intervene, but instead is on the time between the Recreational Groups' knowledge that the suit could impact their interests and the motion to intervene."). The motion within less than a month of the Putative Intervenors' opportunity to review the revised settlement is timely.

### 2.   Putative Intervenors fail to overcome the presumption of adequate representation.

Even if Putative Intervenors had an interest in this litigation that might be impaired, they would be adequately represented by the existing parties. "Applicants for intervention bear the burden of proving that they are inadequately represented by a party to the suit." Michigan, 424 F.3d at 443. Putative intervenors "need show only that there is a potential for inadequate representation." Grutter, 188 F.3d at 400 (emphasis in original). "Nevertheless, applicants for

intervention must overcome the presumption of adequate representation that arises when they share the same ultimate objective as a party to the suit." <u>Michigan</u>, 424 F.3d at 443-44. "An applicant for intervention fails to meet his burden of demonstrating inadequate representation 'when no collusion is shown between the representatives and an opposing party, when the representative does not have or represent an interest adverse to the proposed intervenor, and when the representative has not failed in its fulfillment of his duty.'" <u>Bradley v. Milliken</u>, 828 F.2d 1186, 1192 (6th Cir. 1987) (quoting <u>Wade v. Goldschmidt</u>, 673 F.2d 182, 186 n.7 (7th Cir. 1982)). Putative Intervenors fail to overcome the presumption of adequate representation.

Putative Intervenors must overcome the presumption that they are adequately represented by the existing parties. Putative Intervenors and Plaintiffs share the same ultimate objective, to maximize payment from VICTRA to the potential collective. <u>See</u> <u>Glass v. UBS Financial Servs., Inc.</u>, No. C-06-4068 MMC, 2007 WL 474936, at *6 (N.D. Cal. Jan. 17, 2007) ("[Putative intervenor] and the named Glass plaintiffs have the same ultimate objective: obtaining compensation for assertedly unpaid overtime . . . ."). Putative Intervenors' litigation strategy differs from Plaintiffs', but that does not change the presumption. <u>See</u> <u>Bradley</u>, 828 F.2d at 1192 ("A mere

disagreement over litigation strategy or individual aspects of a [remedy] does not, in and of itself, establish inadequacy of representation."). The presumption of adequate representation must be overcome. Michigan, 424 F.3d at 443-44.

Putative Intervenors allege that the settlement is the result of a reverse auction and that there has been collusion between the parties, which, if true, would overcome the presumption of adequate representation. Putative Intervenors allege several facts that they claim permit an inference of collusion. The thrust of the Putative Intervenors' reverse-auction allegation is that, because the original complaint did not include the off-the-clock claims, the addition of those claims when the parties reached the settlement agreement demonstrates that VICTRA is attempting to buy out those claims at a reduced rate and that the Named Plaintiffs are allowing them to do so. (See D.E. No 78 at 1251, 1262.)

Putative Intervenors cite no evidence in the record to support their allegations of collusion. Courts require "concrete evidence of collusion." Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1189 (10th Cir. 2002); see Swinton v. SquareTrade, Inc., 960 F.3d 1001, 1006 (8th Cir. 2020) (pointing to facts in the record permitting an inference of collusion was "insufficient evidence of a reverse auction"); Negrete v. Allianz Life Ins. Co. of North America, 523 F.3d

1091, 1099 (9th Cir. 2008) ("[T]here is no evidence of underhanded activity in this case."); cf. Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship, 874 F.3d 692, 697 (11th Cir. 2017) (holding that emails showing a "'Machiavellian' plan to undercut [putative intervenors'] negotiating position" was evidence of inadequate representation). If concrete evidence were not required, all settlements of competing cases where there are multiple collective actions would be derailed by accusations of reverse auction. See Negrete, 523 F.3d at 1100 (quoting Rutter, 314 F.3d at 1189) ("[I]f Negrete's argument were accepted, the 'reverse auction argument would lead to the conclusion that no settlement could ever occur in the circumstances of parallel or multiple class actions—none of the competing cases could settle without being accused by another of participating in a collusive reverse auction.'").

### 3. Intervention is denied.

Exercising its discretion, Stringfellow, 480 U.S. at 382 n.1, the Court denies permissive intervention. Even assuming there were at least one common question of law or fact, permissive intervention would result in undue delay and prejudice to the parties. See Michigan, 424 F.3d at 445 (citing Mich. State AFL-CIO, 103 F3d at 1248). Allowing intervention at this stage for the purpose of opposing the settlement would

26

delay the outcome of the litigation. Intervention for the purpose of disrupting the settlement is prejudicial to the parties. See Bailey, 320 F. App'x at 366-67. Permissive intervention is denied.

Because they fail to overcome the presumption of adequate representation, Putative Intervenors do not satisfy the requirements for mandatory intervention. Putative Intervenors' request for permissive intervention is denied because intervention would result in delay and prejudice to the parties. Intervention would not assist the Court. Putative Intervenors' Motion to Intervene is DENIED.

**B.   Preliminary Approval of the Collective**

The Collective has been conditionally certified. For purposes of preliminary approval, the similarly situated standard has been satisfied. The parties have otherwise resolved the Court's concerns. The Notice and Consent Forms are appropriate.

**1.   Similarly Situated**

On August 11, 2020, the parties filed a Stipulated Motion for conditional certification of the collective. (D.E. No. 68.) That motion asked the Court to determine that the members of the collective, including both the manager and non-manager sub-collectives, were similarly situated. (Id.) On October 15, 2020, the Court granted the relief the parties requested. (D.E.

No. 87.) That relief resolved the first inquiry, which is that
the members of the collective are similarly situated. (See id.)

### 2.  The Opt-In Requirement

Having satisfied the similarly situated inquiry, the
parties must satisfy the opt-in requirements for the collective
to be viable. Comer, 454 F.3d at 546 (citing 29 U.S.C. §
216(b), and Hoffmann-La Roche, 493 U.S. at 167-68). The Court
has broad discretion to approve and shape the procedures and
the form and content of the notice and consent forms, including
the scope of the applicable releases. See Hoffmann-La Roche,
493 U.S. at 169. The Court must assure that plaintiffs who
decide to opt in are allowed to do so in "an efficient and
proper way" that is "orderly, sensible, and not otherwise
contrary to statutory commands or the provisions of the Federal
Rules of Civil Procedure." Id. at 170-71.

### a.  Opt-In Procedures

The Court previously rejected the parties' suggested opt-
in procedures because they required only that a potential
plaintiff cash a check to be bound by the terms of the
settlement. (D.E. No. 66 at 843-847.) That procedure did not
comport with the provisions of 29 U.S.C. § 216(b). (Id.) The
parties have revised the opt-in procedures. (See D.E. No. 71-1
at 934-36.)

The revised opt-in procedures comport with the statutory requirements of the FLSA because they require written notification that a plaintiff wishes to opt-in to be filed with the Court. (See id.) The procedures provide for VICTRA to make available information about potential plaintiffs for the purpose of providing them notice of this action. (Id.) After receiving the notice, potential plaintiffs will return a completed consent form if they wish to be included in the collective. (Id.) The consent forms will then be filed with the Court. (Id.) These procedures comport with the statute. See Smothers v. NorthStar Alarm Servs. LLC, No. 2:17-cv-00548-KJM-KJN, 2020 WL 1532058, at *3 (E.D. Cal. March 31, 2020) (approving opt-in procedures where parties had revised their opt-in procedures from a check cashing opt-in to procedures that comported with the FLSA statute); Diaz v. New Work City, Inc., No. 5:16-cv-2319, 2017 WL 4682345, at *3 (N.D. Ohio Oct. 18, 2017) (approving substantially similar opt-in procedures).

The revised procedures also resolve the jurisdictional and justiciability difficulties the Court had with the prior procedures. (See D.E. No. 66 at 848-52.) The Court rejected the prior procedures because the Court would have dismissed the case before the collective's potential plaintiffs had opted-in. (Id. at 849.) Under the revised procedures the Court would dismiss the case only after all potential plaintiffs had opted-

in and the settlement had received final approval. (See D.E. No. 71-1 at 942.) That procedure is "orderly" and "sensible." Hoffmann-La Roche, 493 U.S. at 170-71; cf. Douglas v. Allied Universal Sec. Servs., 381 F. Supp. 3d 239, 240-41 (E.D.N.Y. 2019) (holding that dismissing case before potential plaintiffs opted-in was "fundamentally at odds with the nature of collective action opt-in practices").

### b.   The Notice and Consent Forms

The parties have agreed on language for the proposed notice and consent forms. (See D.E. No. 71-1 at 935, 953-961; D.E. No. 89-2.) Courts often rely on agreement between the parties on language for notice and consent forms to serve as a check against improper forms. See Doe No. 1 v. United States, 147 Fed. Cl. 421, 423 (Fed. Cl. 2020) (approving notice where "[p]laintiffs and the government have agreed upon a proposed notice regarding the rights of potential plaintiffs to join this lawsuit"); Morales v. Rite Rug Co., No. 3:16-cv-00072, 2017 WL 6945344, at *6 (M.D. Tenn. Jan. 23, 2017) (resolving disputes over proposed notice forms by having the parties develop agreed upon language); Loveland-Bowe v. Nat'l Healthcare Corp., No. 3-15-1084, 2016 WL 1625820, at *2 (M.D. Tenn. Apr. 25, 2016) (same); cf. Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 91, 97 (S.D.N.Y. 2003) (noting that, although no court has "outlined what form court-

authorized notice should take," the Supreme Court has said the trial court has broad discretion over such details).

The Court previously objected to the scope of the release that would be binding on potential opt-in plaintiffs. (D.E. No. 66 at 855-58.) The parties have revised the release and narrowed its scope. (See D.E. 71-1 at 954-55, 960.) The release now reads:

> I understand that, by completing and submitting this Consent and becoming an Opt-In Plaintiff, once the Court grants final approval of the Settlement, I (and my spouse, heirs, assigns, administrators, executors, beneficiaries, conservators, successors, insurers, and attorneys) fully waive, release, and forever discharge Victra and any of its predecessors, successors, and assigns, and each of their respective parents, subsidiaries, affiliates, divisions, and all of their respective present and former officers, directors, shareholders, employees, insurers, lawyers, and agents seeking damages from any and all known and unknown claims that accrued after June 10, 2016, through August 7, 2020, arising under the FLSA and relating to the payment or non-payment of (1) overtime wages, including the calculation of overtime wages, or (2) compensation for off-the-clock work as asserted in the Second Amended Complaint.

The scope of the revised release is appropriate because "the release specifically cabins the categories of relinquished claims to those based upon or reasonably related to the pleadings and claims asserted in the Settlement Agreement." Does 1-2, 925 F.3d at 900 (approving a release that was not identical to the claims in the pleadings, but was based on those pleadings) (quotation marks omitted).

The General Release remains broad in scope, but it applies only to the Named Plaintiffs and not to opt-in plaintiffs. (See D.E. 71-1 at 941; D.E. 71 at 917.)

The notice does not alert the potential collective of other suits they may be able to opt-into. However, the notice is not required to do so where all collective members will be entitled to some monetary relief. Does 1-2, 925 F.3d at 901.

The Notice Form is approved as stipulated in D.E. No. 89-2 with the following change:

> In the last sentence of the section titled "What do I give up by participating in this settlement?," the phrase "amount of the enclosed check" shall be updated to read "estimated payment amount reflected in this notice."

The parties shall proceed with notice and opt-in as outlined in the Settlement Agreement, with the change made by the Court to the Notice Form.

## C.  Preliminary Approval of the Amended Settlement

### 1.  A bona fide dispute exists.

The Court must "ensure that the parties are not, via settlement of the claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." Rotuna v. W. Customer Mgmt. Grp., LLC, No. 4:09CV1608, 2010 WL 2490989, at *5 (N.D. Ohio June 15, 2010). "The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the

settlement process to permit the employer to avoid its obligations under the FLSA." Ochs v. Modern Design, Inc., No. 5:14CV635, 2014 WL 4983674, at *2 (N.D. Ohio Oct. 6, 2014); see also Rotuna, 2010 WL 2490989, at *5. "A bona fide dispute exists when there are legitimate questions about 'the existence and extent of [d]efendant's FLSA liability.'" Selk, 159 F. Supp. 3d at 1172 (quoting Ambrosino v. Home Depot U.S.A., Inc., No. 11cv1319L(MDD), 2014 WL 1671489, at *1 (S.D. Cal. Apr. 28, 2014)).

There are legitimate questions about the existence and extent of VICTRA's FLSA liability. The parties dispute whether VICTRA is required to allocate commission payments on a per-workweek basis. (D.E. 71 at 902.) The dispute turns on whether it is practicable for VICTRA to do so because VICTRA is only required to allocate commission payments where it is practicable under 29 C.F.R. § 778.120. (Id.) Whether the data necessary to allocate commission payments exists or whether it is practicable to obtain the data is a legitimate question. There is also a legitimate question about Plaintiffs' ability to proceed as a collective in the absence of the settlement because there are arbitration agreements between VICTRA and the potential collective members. (Id. at 902-03.) The risk of arbitration if the potential collective were to proceed without the settlement is not hypothetical. See Duplechain v. ABC

Phones of North Carolina, Inc., et al., No. 20-287-JWD-SDJ
(M.D. La. Oct. 23, 2020) (D.E. No. 57) (compelling arbitration
based on substantially similar arbitration agreements).

> ### 2.  Whether the Amended Settlement is fair and reasonable.

Because the settlement must stand or fall in its entirety,
the Court must preliminarily consider the settlement amount
under the UAW factors and evaluate the other components of the
settlement to determine whether the settlement is fair and
reasonable.

> ### a.  The Relevant UAW Factors

> #### i.  Likelihood of Success on the Merits

Likelihood of success on the merits is the most important
of the UAW factors. See Does 1-2, 925 F.3d at 895. "This is not
simply an estimation of the plaintiffs' chances of success on
the merits, but rather a balancing of the likelihood of success
'against the amount and form of the relief offered in the
settlement.'" Ware v. CKF Enters., Inc., No. 5:19-183-DCR, 2020
WL 2441415, at *11 (E.D. Ky. May 12, 2020) (quoting Does 1-2,
925 F.3d at 895).

The likelihood of success on the merits turns primarily on
two issues, both of which cut against Plaintiffs' likelihood of
success. The first is whether, disregarding the parties'
stipulation for settlement purposes, the potential collective

can be considered "similarly situated." The second is whether the arbitration agreements and class waivers are enforceable.

VICTRA maintains that it had no single unlawful policy or plan and, therefore, that no collective could be certified. (D.E. No. 71 at 906-07); see, e.g., Pacheco v. Boar's Head Provisions Co., 671 F. Supp. 2d 957, 961 (W.D. Mich. 2009) (("[C]ourts have consistently required the plaintiffs to show that the class members were together the victims of 'a single decision, policy, or plan' before they will certify a collective action.") (collecting cases). Plaintiffs allege two possible policies: that employees worked off-the-clock overtime hours and that VICTRA did not correctly calculate overtime commissions. (D.E. No. 71 at 910.) VICTRA maintains that its policies encourage employees to report all overtime. (Id. at 911.) The records on which the parties relied during their negotiations demonstrate that employees routinely reported overtime worked. (Id. at 911 n.11); cf. Frye v. Baptist Mem. Hosp., No. 07-2708, 2010 WL 3862591, at *8 (W.D. Tenn. Sept. 27, 2010) ("Where employees sometimes use procedures to report time worked but neglect to do so for all time worked, an employer has no reason to know of the unreported time."). VICTRA maintains, as discussed supra, IV.C.1, that it is not practicable to include commissions in the regular rate for overtime calculations. (Id. at 912.) It is not at all clear

35

that Plaintiffs would be able to demonstrate, using competent evidence, that their allegations of a single policy to which the collective was subjected are accurate.

Even if Plaintiffs could make such a showing, the arbitration agreements and class waivers may be enforceable, foreclosing the possibility of success on the merits. See supra, IV.C.1, discussing Duplechain, No. 20-287-JWD-SDJ (D.E. No. 57). If the arbitration agreements and class waivers are enforceable, there will be no chance of success on the merits for the collective. See Walthour v. Chipio Windshield Repair, LLC, 745 F.3d 1326, 1332-37 (11th Cir. 2014) (holding that arbitration agreements with collective action waivers are enforceable in the context of an FLSA putative collective action and thus affirming order compelling arbitration and dismissing FLSA complaint).

Given the significant hurdles to recovery of substantial damages, the settlement appears reasonable based on this UAW factor.

### ii.  Risk of Fraud or Collusion

There is no evidence of fraud or collusion. See supra, IV.A.3. "[C]ourts customarily demand evidence of improper incentives for the class representatives or class counsel . . . before abandoning the presumption that the class representatives and counsel handled their responsibilities with

the independent vigor that the adversarial process demands." UAW, 297 F.3d at 628; see also Collins v. Sanderson Farms, Inc., 568 F. Supp. 2d 714, 725 (E.D. La. 2008) ("The Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary.").

As in Ware, where this factor weighed in favor of the fairness of the settlement, here there is a bona fide dispute, there has been some, albeit informal, discovery, see infra, IV.C.2.a.iv, the parties have conducted mediation, and the two sides conducted an arm's length settlement process. Ware, 2020 WL 2441415, at *13. These facts illustrate the lack of fraud or collusion. This factor weighs in favor of the fairness of the settlement.

### iii. The Complexity, Expense, and Duration of the Litigation

This case is complex and would involve lengthy and expensive litigation in the absence of the settlement. There are more than 20,000 members of the potential collective. (D.E. No. 71 at 912.) Given that no formal discovery has taken place, and the difficulty of proving, in particular, the Plaintiffs' off-the-clock claims, it is likely that this litigation would be lengthy and expensive absent settlement. See In re Cincinnati Policing, 209 F.R.D. 395, 400 (S.D. Ohio 2002) (finding that claims requiring substantial discovery were a

factor weighing in favor of the fairness of the settlement). This factor weighs in favor of the fairness of the settlement.

### iv.  Discovery of Parties

Although the parties have not engaged in formal discovery, there has been substantial informal discovery, in the form of more than 400,000 payroll records provided by VICTRA. (D.E. No. 71 at 895.) Informal discovery, where sufficient to develop the parties' understanding of potential claims and defenses, is enough to satisfy this factor. See Does 1-2, 925 F.3d at 898-99 (affirming the district court's reliance on informal discovery to satisfy this factor); Duprey v. Scotts Co. LLC, 30 F. Supp. 3d 404, 409 (D. Md. 2014) (finding informal discovery both sufficient to weigh in favor of the settlement and beneficial because it conserved resources that could go toward the settlement amount).

### v.  The Public Interest

"Settlement is the preferred means of resolving litigation." Crawford v. Lexington-Fayette Urban Cty. Gov't, No. 06-299-JBC, 2008 WL 4724499, at *9 (E.D. Ky. Oct. 23, 2008); see also Williams v. First Nat'l Bank, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts"). "[F]ull enforcement of the FLSA represents a separate important public interest in ensuring that employers comply with federal employment laws." Ware, 2020 WL 2441415, at *14.

The Court adopts the reasoning about this factor from Ware:

> Overall, this factor weighs in favor of preliminary approval. Assuming, for the sake of argument, that the plaintiffs could prove all of their claims, the proposed agreement gives the defendants a good deal and weighs against the interest in fully enforcing the FLSA. However, it is unclear how meritorious the plaintiffs' claims are, and the proposed agreement presents a fair, adequate, and reasonable compromise given this uncertainty. Further, approval of the proposed agreement would serve the interest of resolving this complex case and conserving judicial resources. Therefore, the final factor weighs in favor of preliminary approval.

Id.

### b.   Whether the components of the Amended Settlement are reasonable.

#### i.   The Settlement Amount

The Court previously questioned the reasonableness of the settlement amount because the parties had failed to provide sufficient information for the Court to compare the settlement amount with the Plaintiffs' potential recovery in the absence of settlement. (See D.E. No. 66 at 852-55.) The parties have provided additional information that allows the Court to scrutinize the settlement amount. (See D.E. No. 71 at 909-915.)

For purposes of preliminary approval, the settlement amount is reasonable. The parties have provided their estimates of the maximum recovery of Plaintiffs under both theories of under compensation that Plaintiffs have raised. For the off-

the-clock claims, the parties estimate that the settlement amount represents about forty-five percent of the maximum recovery amount. (D.E. No. 71 at 912.) For the miscalculation of overtime claims, the parties estimate that the settlement amount represents about forty-two percent of the maximum recovery amount. (D.E. No. 71 at 913.) Given the significant risk of limited or no recovery, <u>supra</u>, these amounts are reasonable. <u>See</u> <u>Gundrum v. Cleveland Integrity Servs., Inc.</u>, No. 17-CV-55-TCK-tlw, 2017 WL 3503328, at *4 (N.D. Okla. Aug. 16, 2017) ("The settlement agreement provides Class Members who choose to participate with financial recovery in a relatively short time frame compared to the expected time for litigation and the risk of reduced or no recovery."); <u>Devlin v. Ferrandino & Son, Inc.</u>, No. 15-4976, 2016 WL 7178338, at *6 (E.D. Penn. Dec. 9, 2016) ("This settlement amount is reasonable in light of the attendant risk that the Settlement Class Members may not have obtained any recovery if this case were litigated."). That both sides have been represented by experienced counsel is a further guarantor of the fairness of the settlement amount. <u>See</u> <u>Nyazee v. MBR Mgmt. Corp.</u>, No. 4:14-CV-01561-AGF, 2016 WL 126363, at *2 (E.D. Mo. Jan. 12, 2016) ("The parties were represented by experienced counsel throughout the pendency of this case.").

If finally approved, the settlement amount will be distributed to the collective based on a formula developed by the parties. (D.E. No. 71 at 913.) That formula is based on the number of days worked per week, given the assumption that the likelihood of an employee working overtime is related to the number of days that employee worked in a week. (Id.) The parties have provided detailed examples of how the formula works to explain how the settlement proceeds will be distributed. (Id. at 913-14 n.13.) The procedure appears reasonable and has been judicially approved. See Hatzey v. Divurgent, LLC, No. 2:18-cv-191, 2018 WL 5624300, at *3 (E.D. Va. Oct. 9, 2018) (approving the use of a formula that divided funds among collective members); Nyazee, 2016 WL 126363, at *2 ("Net funds from the gross settlement amount are to be distributed to class members according to an equitable formula determined by class counsel, but which rests primarily on the total number of deliveries driven by each class member while an MBR employee.").

### ii. Service Awards

The service awards to the Named Plaintiffs are preliminarily approved. The Settlement Agreement provides for $10,000 service awards for the two Named Plaintiffs in this case. (D.E. No. 71-1 at 940.) That amount appears reasonable given the benefit to the collective from the Named Plaintiffs'

participation in the suit. See Wineland v. Casey's General Stores, Inc., 267 F.R.D. 669, 677-78 (S.D. Iowa 2009). Courts routinely approve service awards for named plaintiffs. Id. (approving $10,000 service awards); see also Irvine v. Destination Wild Dunes Mgmt., Inc., 204 F. Supp. 3d 846, 851 (D.S.C. 2016) (approving $5,000 service awards); Febus v. Guardian First Funding Grp., LLC, 870 F. Supp. 2d 337, 342 (S.D.N.Y. 2012) (approving $3,000 service awards); In re M.L. Stern Overtime Litigation, No. 07cv118 BTM (JMA), 2009 WL 3272872, at *4 (S.D. Cal. Oct. 9, 2009) (approving $15,000 service awards); Purdie v. Ace Cash Express, Inc., 301CV1754L, 2003 WL 22976611, at *7 (N.D. Tex. Dec. 11, 2003) (approving $16,665 service awards in part due to consideration of "various settlement proposals"); cf. Alvarez v. BI Inc., No. 16-2705, 2020 WL 1694294, at *12 (E.D. Penn. Apr. 6, 2020) (disapproving $15,000 service awards where the awards were in part consideration for a release broader than the release binding the opt-in plaintiffs).

### iii. Attorneys' Fees

The Court previously raised objections to the attorneys' fees contemplated by the settlement. (D.E. No. 66 at 858-65.) The first objection was that there was no information for the Court to evaluate the reasonableness of the amount of the attorneys' fees. (Id. at 862.) The second objection was to the

clear sailing clause. (Id. at 863.) The third objection was to the reversion of unapproved fees to VICTRA. (Id. at 863-65.)

The Settlement Agreement continues to contain a clear sailing clause. (See D.E. No. 71-1 at 940.) However, as the Court's prior Order acknowledged, the presence of such a clause is not disqualifying, but warrants heightened review of the attorneys' fees. (See D.E. No. 66 at 863) (citing Gascho v. Glob. Fitness Holdings, LLC, 822 F.3d 269, 291 (6th Cir. 2016)).

The Court previously rejected the reversion of unapproved attorneys' fees and unclaimed settlement funds to VICTRA. (D.E. No. 66 at 863-65.) Those clauses have been altered in the Amended Settlement Agreement. Any unapproved attorneys' fees will be distributed to the collective. (D.E. No. 71-1 at 941.) Any unclaimed settlement funds will be distributed to a charity to be named later that benefits opt-in plaintiffs or VICTRA employees. (Id. at 943.) Those changes to the reversion of unapproved fees and unclaimed settlement funds are reasonable.

The parties have provided sufficient information for the Court to determine preliminarily that the attorneys' fees are reasonable. The brief in support of the Joint Motion articulates some of the work Plaintiffs' attorneys have done in this action. Although it does not provide an hourly breakdown or the rates that Plaintiffs' attorneys would charge hourly, it

does provide a basis for the Court to evaluate the fees preliminarily. The fees appear reasonable based on their percentage of the settlement amount. The requested fee is less than twenty-five percent of the total settlement amount, which falls below the standard range of twenty-five to thirty-five percent. (D.E. No. 71 at 920; see D.E. No. 66 at 859 (citing Rembert v. A Plus Home Health Care Agency LLC, No. 2:17-cv-287, 2020 WL 1443041, at *3 (S.D. Ohio Mar. 25, 2020).)

## V. Conclusion

The Hardney Motion is DENIED AS MOOT. The Motion to Intervene is DENIED. The Joint Motion is GRANTED. The Court FINDS and ORDERS that:

1. The Amended Settlement is conditionally APPROVED as fair, reasonable, and adequate to the members of the FLSA Collective, subject to further consideration at the Final Approval Hearing.

2. The Notices fully satisfy the requirements of due process, provide the best notice practicable under the circumstances to the members of the FLSA Collective, and provide individual notice to all members of the FLSA Collective who can be identified through reasonable effort.

3. The parties are DIRECTED to proceed with notice and opt-in as outlined in the Amended Settlement Agreement, with the change made by the Court to the Notice Form.

4.  Within fourteen (14) days of the entry of this Preliminary Approval Order, VICTRA shall provide the Settlement Administrator with a chart listing the names, employee identification numbers, last known addresses, email addresses, Social Security numbers, and any other pertinent information necessary to the administration process as that information exists in the business records of VICTRA of the Potential Opt-In Plaintiffs.

5. Within seven (7) days of the entry of this Preliminary Approval Order, the parties shall provide calculations to the Settlement Administrator, consistent with the calculation formula set forth in the Amended Settlement Agreement showing the approximate amount for each Potential Opt-In Plaintiff's Individual Settlement Payment.

6. Within fourteen (14) days of the receipt of the chart with Potential Opt-In Plaintiffs' information, the Settlement Administrator shall distribute the Notices by mail.

7. Each Potential Opt-In Plaintiff will have ninety (90) days following the mailing of the Notice to complete and submit the Consent Form, electronically or by mail. In completing and signing the Consent Form, each Opt-In Plaintiff will attest that he or she believes "at some point during the time period of June 10, 2016, through August 7, 2020, and in the course of my employment for VICTRA, (1) there were one or more workweeks

when [he/she] worked overtime and earned commission payments and/or nondiscretionary bonuses; AND/OR (2) [he/she] worked overtime hours off-the-clock for which [he/she] believe[s] [he/she] was not fully compensated." If any Potential Opt-In Plaintiff disputes his or her allocation or attempts to qualify, condition, or limit his or her acceptance of the terms of this Amended Settlement, the Settlement Administrator will promptly notify VICTRA and Named Plaintiff's counsel by email.

8. Within sixty (60) days of the Opt-In Deadline, all Consent Forms shall be filed with the Court. Upon the filing of the Consent Forms, each Potential Opt-In Plaintiff will become an "Opt-In Plaintiff" under the terms of the Amended Settlement Agreement, a member of the Collective, and thus be subject to all terms applicable to Plaintiffs.

9. The Final Approval Hearing shall be held before the undersigned at 1:30 PM on July 1, 2021, which is not less than one-hundred eighty (180) days from the entry of this Order, in Courtroom 3, at the United States District Court for the Western District of Tennessee, 167 North Main Street, Memphis, TN 38103, to consider whether:

> (a) the proposed Amended Settlement on the terms and conditions provided in the Amended Settlement Agreement is fair, reasonable, and adequate, and should be approved by the Court;

> (b) the request for attorney's fees should be approved;

(c) the request for a service payment to the Named Plaintiffs should be approved; and

(d) to rule on such other matters as the Court may deem appropriate.

10. If an in-person hearing is impracticable, the hearing will be conducted by videoconference using Microsoft Teams.

11. The Court reserves the ability to adjourn and reschedule the Final Approval Hearing without further written notice to the Collective.

12. Any member of the FLSA Collective who has opted-in may appear at the Final Approval Hearing in person or by counsel (if an appearance is timely filed and served) and may be heard to the extent allowed by the court in support of, or in opposition to, the fairness, reasonableness, and adequacy of the Amended Settlement, including the proposed awards of attorney's fees, service payments, and other costs; provided, however, that no member of the FLSA Collective shall be heard in opposition of the Amended Settlement unless, no later than twenty-one (21) days before the Final Approval Hearing, such member of the FLSA Collective has:

(a) filed with the Clerk of the Court, United States District Court for the Western District of Tennessee, Clifford Davis/Odell Horton Federal Building, 167 North Main Street, Memphis, TN 38103, a written objection stating:

(i) the case name and number, O'Bryant et al. v. ABC Phones of North Carolina, Inc., d/b/a

VICTRA, f/d/b/a A Wireless, No. 2:19-cv-02378 (W.D. Tenn.);

(ii)     the objector's name, address, telephone number, signature, and, if represented by counsel, the name and contact information for counsel;

(iii) the specific grounds for objection;

(iv)     whether the objection applies only to the objector, to a specific subset of the FLSA Collective, or to the entirety of the FLSA Collective; and

(b) served a copy of his or her written objection on the Settlement Administrator at the address provided in the Notices.

13. Any member of the FLSA Collective who does not object in the manner prescribed above shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, and adequacy of the Amended Settlement or the requests for awards of attorney's fees, service payments, and other costs.

14. No later than seven (7) calendar days before the Final Approval Hearing, Counsel shall cause to be filed with the Court a response to any timely filed objections to the Amended Settlement.

15. Counsel shall submit its filings in support of final approval of the Amended Settlement Agreement and the requests for awards of attorney's fees, service payments, and other

costs no later than twenty (20) days before the Final Approval Hearing.

SO ORDERED this  22nd  day of December, 2020.


/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE