IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JACOB O'BRYANT and MARK BRANDON BAKER, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>ABC PHONES OF NORTH CAROLINA, INC. d/b/a VICTRA, f/d/b/a A WIRELESS,<br><br>    Defendant. | No. 19-cv-02378-SHM-tmp<br><br>JURY DEMAND |

**ORDER**

Before the Court is the June 11, 2021 Joint Motion for Final Approval of Amended Settlement Agreement (the "Motion for Final Settlement Approval"). (ECF No. 98.) That motion is brought by Plaintiffs Jacob O'Bryant and Mark Baker (collectively, "Plaintiffs" or "Named Plaintiffs") and Defendant ABC Phones of North Carolina, Inc., d/b/a VICTRA, f/d/b/a A Wireless ("VICTRA"). Also before the Court is Plaintiffs' June 11, 2021 Unopposed Motion for Approval of Attorneys' Fees and Costs and Class Representative Service Awards (the "Motion for Attorney's Fees, Costs, and Service Awards"). (ECF No. 99.)

The Court held a fairness hearing on July 1, 2021, at which it heard arguments by counsel. No one appeared in opposition. For the following reasons, the Motion for Final Settlement Approval is GRANTED. The Motion for Attorney's Fees, Costs, and Service Awards is GRANTED.

## I.   Background

This dispute arises from VICTRA's alleged failure to pay overtime compensation to certain employees. On June 10, 2019, Named Plaintiffs, individually and on behalf of all other "similarly-situated" individuals, filed a collective action lawsuit against VICTRA. (ECF No. 1.) On September 9, 2019, Plaintiffs filed a First Amended Complaint and Joint Motion for Settlement Approval. (ECF Nos. 12, 14.) On July 3, 2020, Plaintiffs filed a Joint Motion for Approval of First Amendment to Settlement and Release Agreement. (ECF No. 58.) The Court denied the motion. (ECF No. 66.)

On August 11, 2020, Plaintiffs filed their Second Amended Complaint, which is the operative complaint. (ECF No. 67.) The Second Amended Complaint alleges that VICTRA violated the Fair Labor Standards Act, 29 U.S.C. § 206 (the "FLSA"), when it 1) failed to pay managers and non-managers for overtime work, and 2) failed to include commission payments when calculating "regular rates" for managers and non-managers. (ECF No. 67.)

On August 14, 2020, the Parties submitted a Joint Motion for Settlement Approval - Preliminary Approval of Amended Settlement, which included an amended settlement agreement (the "Amended Settlement"). (ECF No. 71.; ECF No. 71-1). The Amended Settlement establishes a $1,400,576.40 fund for Opt-In Plaintiffs (the "Total Maximum Settlement Amount").[1] (ECF No. 71-1 at 929.) Recovery for an individual Opt-In Plaintiff is a function of the number of days worked by the individual Opt-In Plaintiff compared to the aggregate number of days worked by the relevant sub-collective (i.e., managers or non-managers). (ECF No. 71-1 at 937-39.[2]) The Total Maximum Settlement Amount does not include service awards to the Named Plaintiffs, attorney's fees, or the Administration Fee. (ECF No. 71-1 at 929.) A clear sailing provision covers attorney's fees and expenses up to $442,250.00.  (ECF No. 71-1 at 940; Draft Hr'g Tr. 19:18-22.) Court-approved attorney's fees and expenses are not included in the Total Maximum Settlement Amount. (ECF No. 71-1 at 941.) Unapproved attorney's fees and expenses are distributed to the collective. (ECF No. 71-1 at 941.)

On October 15, 2020, the Court entered an Order Accepting and Granting the Conditional Certification Stipulated Motion

---

[1] Capitalized terms, otherwise undefined, carry the meaning ascribed to them in the Amended Settlement.

[2] Pincites in ECF documents refer to the PageID number.

(ECF No. 87.) In accordance with the Parties' stipulations, the Court conditionally certified the following collective:

> Current and former non-exempt employees of Defendant VICTRA who worked as store managers and non-manager retail employees who worked in any Defendant VICTRA-owned store in the United States at any time between June 10, 2016, and August 7, 2020.

On December 22, 2020, the Court granted preliminary approval of the Amended Settlement (the "Preliminary Approval Order"). (ECF No. 94.) The Court conditionally approved the Amended Settlement as fair, reasonable, and adequate and found that the Notice to the class fully satisfied the requirements of due process and provided the best notice practicable under the circumstances to all Potential Opt-in Plaintiffs. (Id. at 1522.) The Court directed the parties to send Notices to the collective. (Id. at 1510, 1522.)

On January 19, 2021, the Settlement Administrator mailed Notices and Consent Forms to each of the 21,354 Potential Opt-In Plaintiffs. (ECF No. 98 at 1541.) The Notice advised Potential Opt-In Plaintiffs that they could submit a Consent Form by April 19, 2021 (the "Opt-In Deadline"). (Id.) The Settlement Administrator took additional steps to locate Potential Opt-In Plaintiffs where initial Notices were returned undelivered. (Id. at 1541.) The Settlement Administrator ultimately delivered Notices to approximately 96% of Potential Opt-In Plaintiffs. (Id. at 1542.) The Settlement Administrator

received 3,750 valid Consent Forms submitted on or before the Opt-In Deadline. (Id.) It received another 59 Consent Forms after the Opt-In Deadline, which the Parties agreed to accept. (Id.; ECF No. 109 at 5514.) The Parties properly filed 3,809 Consent Forms with the Court before the Final Approval Hearing on July 1, 2021. (ECF No. 109; ECF Nos. 101-08.) Approximately 17% of Potential Opt-In Plaintiffs opted in. (ECF No. 98 at 1551.) Under the Amended Settlement formula, total recovery amounts to $480,767.50, excluding attorney's fees, costs, and service awards. (ECF No. 109 at 5515.) The average recovery is $126.15 per Opt-In Plaintiff, with a minimum recovery of $25.00 and a maximum recovery of $1,088.43. (Id.)

Plaintiffs seek $442,250.00 in attorney's fees and costs. (ECF No. 99 at 1587.) That figure includes approximately $11,000 in costs for filing fees, travel, mediation, legal research, printing, and postage. (ECF No. 99-1 at 1592.) Plaintiffs' Counsel submitted declarations that it had devoted approximately 500 hours to the matter at a blended $450 hourly rate. (ECF No. 99 at 1580.) Plaintiffs seek $10,000.00 for each Named Plaintiff. (Id. at 1575.)

## II. Jurisdiction

Plaintiffs allege violations of the FLSA. The Court has subject matter jurisdiction over FLSA claims under the general grant of federal question jurisdiction in 28 U.S.C. § 1331.

5

## III. Standard of Review

### A. Standard for Final Approval of FLSA Collective Action Settlements

Section 216(b) of the FLSA permits an employee to recover unpaid overtime compensation by suing an employer "in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The FLSA's overtime compensation provisions are "mandatory and, except as otherwise provided by statute, are generally not subject to being waived, bargained, or modified by contract or by settlement." Kritzer v. Safelife Solutions, LLC, No. 2:10-cv-0729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012) (citing Dillworth v. Case Farms Processing, Inc., No. 5:08-cv-1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010), and Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697 (1945)).

There are two ways in which claims for back wages arising under the FLSA can be settled or compromised. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982). First, the Department of Labor can supervise a settlement. See Collins v. Sanderson Farms, Inc., 568 F. Supp. 2d 714, 719 (E.D. La. 2008) (citing 29 U.S.C. § 216(c)). Second, "[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment

after scrutinizing the settlement for fairness." Lynn's, 679 F.2d at 1353 (citing Schulte, Inc. v. Gangi, 328 U.S. 108, 113 n.8 (1946)).

In an FLSA collective action, a court will grant a motion for settlement approval only after finding that: (1) the opt-in plaintiffs are "similarly situated"; (2) the opt-in plaintiffs have properly filed written consents with the court; and (3) the settlement is "a fair and reasonable resolution of a bona fide dispute." See 29 U.S.C. § 216(b); Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006); Lynn's, 679 F.2d at 1353.

### B. Standards for Attorney's Fees, Costs, and Service Awards in FLSA Collective Action Settlements

Attorney's fees and costs are mandatory under the FLSA. 29 U.S.C. § 216(b). "The ultimate amount 'is within the discretion of the judge' and must be reasonable." Ware v. CKF Enterprises, Inc., No. CV 5:19-183-DCR, 2020 WL 5087766, at *7 (E.D. Ky. Aug. 26, 2020) (a hybrid FLSA collective action)(quoting Fegley v. Higgins, 19 F.3d 1126, 1134 (6th Cir. 1994)). "[A] court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." Rawlings v. Prudential-Bache Properties, Inc., 9 F.3d 513, 516 (6th Cir. 1993); see also Davis v. Omnicare, Inc., No. 5:18-CV-142-REW, 2021 WL 4188053, at *6 (E.D. Ky. Sept. 14, 2021)

7

(applying Rawlings to a hybrid FLSA collective action). A court may award reasonable out-of-pocket costs and expenses incurred in the prosecution of claims and in obtaining settlement. See Mullins v. S. Ohio Pizza, Inc., No. 1:17-CV-426, 2019 WL 275711, at *5 (S.D. Ohio Jan. 18, 2019).

"Within this Circuit, district courts have recognized that, 'where the settlement agreement provides for incentive awards, class representatives who have had extensive involvement in a class action litigation deserve compensation above and beyond amounts to which they are entitled . . . by virtue of class membership alone.'" Fitzgerald v. P.L. Mktg., Inc., No. 217CV02251, 2020 WL 3621250, at *11 (W.D. Tenn. July 2, 2020) (a hybrid FLSA collective action) (quoting Lonardo v. Travelers Indem. Co., 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010)).

**IV. Analysis**

**A. Similarly Situated Plaintiffs**

Members of an FLSA collective must be similarly situated plaintiffs under the FLSA. See Comer, 454 F.3d at 546; Bredbenner v. Liberty Travel, Inc., No. CIV.A. 09-1248 MF, 2011 WL 1344745, at *16-17 (D.N.J. Apr. 8, 2011) (analyzing whether plaintiffs were similarly situated at the final settlement approval stage). The Sixth Circuit has not set out "comprehensive criteria for informing the similarly-situated

8

analysis." O'Brien v. Ed Donnelly Enterprises, Inc., 575 F.3d
567, 585 (6th Cir. 2009), abrogated on other grounds by
Campbell-Ewald Co. v. Gomez, 577 U.S. 153 (2016). However, the
Sixth Circuit has made clear that, inter alia, plaintiffs may
be similarly situated where "their claims were unified by
common theories of defendants' statutory violations, even if
the proofs of these theories are inevitably individualized and
distinct." Id.

Based on the allegations in the Second Amended Complaint,
both managers and non-managers were paid an hourly rate plus
commissions. (ECF No. 67 ¶ 16.) Plaintiffs allege that
commissions and other bonuses were not included in the "regular
rate" used to calculate overtime payments for both managers and
non-managers. (Id. ¶ 22.) Plaintiffs allege that both managers
and non-managers were not paid for overtime work. (Id. ¶¶ 27-
30.) Plaintiffs allege that all members of the putative class,
whether managers or non-managers, were subject to the same
FLSA-violating policies. The collective is similarly situated.

**B. Settlement Final Approval**

An FLSA settlement must be "a fair and reasonable
resolution of a bona fide dispute over FLSA provisions."
Lynn's, 679 F.2d at 1355. A court considers several factors
when determining whether a proposed FLSA settlement is fair and
reasonable: (1) the risk of fraud or collusion, (2) the

complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the opinions of class counsel and class representatives, (6) the reaction of absent class members, and (7) the public interest. Does 1-2 v. Déjà Vu Services, Inc., 925 F.3d 886, 894-95 (6th Cir. 2019) (citing Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007)); see also Fitzgerald, 2020 WL 3621250, at *6 (W.D. Tenn. July 2, 2020).

The Amended Settlement resolves a bona fide dispute over FLSA provisions. The Parties dispute whether VICTRA is required to allocate commission payments on a per-workweek basis. (ECF No. 71 at 902.)  Under 29 C.F.R. § 778.120, an employer is only required to allocate commission payments where practicable. Whether the data necessary to allocate commission payments exists or whether it is practicable to obtain the data is a legitimate question. The Parties dispute whether VICTRA maintained an unlawful policy with respect to overtime work.

The Amended Settlement is fair and reasonable. There is no evidence of fraud or collusion. The case is complex and would involve lengthy and expensive litigation in the absence of settlement. The Parties engaged in significant informal discovery, sufficient to develop the Parties' understanding of

10

potential claims and defenses. Plaintiffs' success at trial would not have been assured. VICTRA maintains that it had no unlawful policy with respect to overtime and that no collective could be certified. VICTRA maintains that its employees are subject to enforceable arbitration agreements and class waivers that would have precluded a collective action in the absence of a settlement.

Named Plaintiffs and Plaintiffs' Counsel support the Amended Settlement. (Draft Hr'g Tr. 4:20-23; 5:9-12.) Because this is an opt-in FLSA collective action, there are no absent class members. Athan v. United States Steel Corp., No. 17-CV-14220, 2021 WL 805430 (E.D. Mich. Mar. 3, 2021). No objections have been made to the Amended Settlement.

Evaluation of the public interest balances the interest in ensuring that employers comply with federal employment law against both the possibility that plaintiffs' claims are not meritorious and the need to conserve judicial resources. Ware, 2020 WL 5087766, at *7. The Court finds that approval of the final settlement is in the public interest.

### C.   Attorney's Fees, Costs, and Service Awards

#### 1.   Attorney's Fees

A district court has discretion to choose between the percentage-of-the-fund method and the lodestar method when awarding attorney's fees. See Van Horn v. Nationwide Property

and Cas. Ins. Co., 436 F. App'x 496, 498 (6th Cir. 2011);
Ditsworth v. P & Z Carolina Pizza, No. 1:20-CV-00084-GNS, 2021
WL 2941985, at *1 (W.D. Ky. July 13, 2021)(a hybrid FLSA
collective action). In the Sixth Circuit, a court may base its
fee award on the percentage-of-the-fund calculation and cross-
check it with the lodestar method. See Bowling v. Pfizer, Inc.,
102 F.3d 777, 780 (6th Cir. 1996).

A court "generally must explain its 'reasons for adopting
a particular methodology and the factors considered in arriving
at the fee.'" Van Horn, 436 F. App'x at 498 (quoting Moulton v.
U.S. Steel Corp., 581 F.3d 344, 352 (6th Cir. 2009)). "The
lodestar method better accounts for the amount of work done,
while the percentage of the fund method more accurately
reflects the results achieved." Rawlings, 9 F.3d at 516. The
"percentage of the fund has been the preferred method for
common fund cases, where there is a single pool of money and
each class member is entitled to a share (i.e., a 'common
fund')." Lonardo, 706 F. Supp. at 789. The existence of a
single pool of money to which Opt-In Plaintiffs are entitled

makes the percentage-of-the-fund method appropriate here.[3] The Court will cross-check with the lodestar method.

When conducting a percentage-of-the-fund analysis, "Attorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class (which includes the 'benefit to class members,' the attorney's fees and may include costs of administration)." Gascho v. Glob. FitnessHoldings, LLC, 822 F.3d 269, 282 (6th Cir. 2016); see also Mullins, 2019 WL 275711, at *4 (applying Gascho to a hybrid FLSA collective action). To determine the benefit to class members, a court generally looks to the amount made available to the class, rather than the amount ultimately claimed. Boeing Co. v. Van Gemert, 444 U.S. 472, 480-81 (1980) ("[Absent class members'] right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of

---

[3] In Lonardo, the court declined to apply the "common fund" label because attorney's fees were "independent" of class recovery (i.e., not a percentage of class recovery) and did not use the percentage-of-the-fund method as a result. See Lonardo, 706 F. Supp. at 789. The "common fund" label does not depend upon the source of attorney's fees. See Internal Imp. Fund Trustees v. Greenough, 105 U.S. 527, 532 (1881) (finding, in a common fund case, that plaintiff was entitled to attorney's fees from the fund itself or directly from other beneficiaries of the action). The application of the percentage-of-the-fund method is appropriate even where attorney's fees are not calculated as a percentage of recovery.

the class representatives and their counsel."); see also
Gascho, 822 F.3d at 286 (following Boeing but finding the
district court did not abuse its discretion when it calculated
total benefits using the midpoint between the benefits
available and the actual payments made); Mullins, 2019 WL
275711, at *4 (applying Boeing and Gascho to a hybrid FLSA
collective action).

The Court finds that the total benefit to the collective
is $1,382,921.95. It selects the midpoint between the benefits
available and the actual payments made: $940,971.95. That
figure balances the total value created by Plaintiffs' Counsel
against the fact that only 17% of the collective opted in and
only 34% of the benefits available were distributed. Gascho v.
Glob. Fitness Holdings, LLC, No. 2:11-CV-436, 2014 WL 1350509,
at *36 (S.D. Ohio Apr. 4, 2014), report and recommendation
adopted, No. 2:11-CV-00436, 2014 WL 3543819 (S.D. Ohio July 16,
2014), aff'd, 822 F.3d 269 (6th Cir. 2016). The Court adds the
$442,225.00 in requested fees and costs to reach the total
benefit to the collective. Addition of requested fees is
particularly appropriate because, under the Amended Settlement,
unapproved fees are distributed to the collective. The Parties
did not provide a figure for Administrative Costs, and the
Court does not include those costs in its calculation.

14

The percentage-of-the-fund calculation shows that requested attorney's fees and costs represent 32% of the total benefit created for the collective. That percentage is consistent with attorney's fees typically awarded in the Sixth Circuit and the Western District of Tennessee. See Fitzgerald, 2020 WL 3621250, at *11 (approving attorney's fees equal to one-third of the gross amount of the settlement fund); Gokare v. Fed. Express Corp., No. 2:11-cv-2131, 2013 WL 12094887, at *4 (W.D. Tenn. Nov. 22, 2013) (collecting cases in which courts in this Circuit have approved attorney's fee awards in common fund cases ranging from 30% to 33% of the total fund).

The lodestar cross-check supports fee approval. The lodestar is "the product of reasonable hours times a reasonable rate." Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986). Lodestar multipliers may be applied to account for the risk that counsel assumes in undertaking a case, the quality of the work product, and the public benefit achieved. Rawlings, 9 F.3d at 516. In wage and hour collective and class actions, lodestar multipliers between 1 and 3 are common. See Arledge v. Domino's Pizza, Inc., No. 3:16-cv-386, 2018 WL 5023950, at *5 (S.D. Ohio Oct. 17, 2018) (approving award of attorney's fees in wage and hour collective and class action at a 2.57 lodestar multiplier); Castillo v. Morales, Inc., No. 2:12-cv-650, 2015 WL 13021899, at *7 (S.D.

Ohio Dec. 22, 2015) (approving award of attorney's fees in wage and hour collective and class action at a lodestar multiplier of approximately 2.5, which "is typical of lodestar multipliers in similar cases").

Plaintiffs' Counsel has declared that it devoted approximately 500 hours to this case at an hourly rate of $450. The hours and rates are reasonable. The resulting lodestar is $225,000. (See id.) Plaintiffs request attorney's fees of $442,500. (ECF No. 99.) The requested fee yields a lodestar multiplier of 1.97. That multiplier is reasonable. It reflects a good result achieved in a contingency fee case where Counsel shared with Plaintiffs the risk of nonrecovery. It is in line with multipliers commonly awarded in common fund actions.

In exercising their discretion over attorney's fees, district courts often address the "Ramey factors":

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

Moulton, 581 F.3d at 352 (quotation marks and citation omitted); see also Ramey v. Cincinnati Enquirer, Inc., 508 F.2d 1188, 1196 (6th Cir. 1974).

The <u>Ramey</u> factors support fee approval. Plaintiffs initially estimated that the Total Maximum Settlement Amount reflected approximately 45% of the total maximum damages that could be achieved at trial. (ECF No. 71 at 912.) Opt-In Plaintiffs received an average recovery of $126.15. (ECF No. 109 at 5515.) Opt-In Plaintiffs likely recovered more than 45% of their actual damages because of post opt-in adjustments to Base Payments amounts. The Total Maximum Settlement Amount and Opt-In Plaintiffs' actual recovery are significant given the disputed nature of the claims and the hurdles to recovery. As discussed <u>supra</u> in addressing the lodestar cross-check, the value of Plaintiffs' Counsel's services on an hourly basis is reasonable. Counsel took this case on a contingent fee basis. Society benefits by encouraging counsel to take on difficult collective actions. The case was legally and factually complex. Counsel for both sides are able and respected.

### 2. Costs

Plaintiffs assert that Plaintiffs' Counsel advanced approximately $11,000 in costs and expenses over the course of the litigation. (ECF No. 99 at 1587.) That figure includes costs for filing, travel, mediation, legal research, printing, and postage. (ECF No. 99-1 at 1592.) Plaintiffs did not separate their costs in their request for $442,250.00 in attorney's fees and costs.  The Court did not separate costs

when it evaluated the request for attorney's fees and found them reasonable, <u>supra</u>. To avoid doubt, the Court finds the costs claimed by Plaintiffs are reasonable. <u>See</u> <u>Mullins</u>, 2019 WL 275711, at *5.

### 3. Incentive Awards

The Amended Settlement provides a payment of $10,000 to each Named Plaintiff. Those service payments are appropriate. Named Plaintiffs actively participated in the lawsuit for approximately two (2) years and provided Plaintiffs' Counsel with helpful insight into VICTRA's operations. (ECF No. 99 at 1586.) Named Plaintiffs actively represented the interests of the collective. The service payments Named Plaintiffs seek are similar to other collective and class action incentive awards approved by courts in this Circuit. <u>See, e.g.,</u> <u>Salinas v. U.S.</u> <u>Xpress Enters., Inc.,</u> No. 1:13-cv-00245, 2018 WL 1477127, at *10 (E.D. Tenn. Mar. 8, 2018) (collecting cases in which courts approved service payments to named plaintiffs between $7,500 and $10,000), <u>adopted by</u> 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018).

## V. Conclusion

For the foregoing reasons, the Motion for Final Settlement Approval is **GRANTED** and the Parties' Amended Settlement is **APPROVED**. The Motion for Attorney's Fees, Costs, and Service Awards is **GRANTED**.

18

The Court **FINDS** that:

1. The record shows that Notices have been distributed to Potential Opt-In Plaintiffs in the manner approved in the Court's December 22, 2020 Preliminary Approval Order. The Notices distributed: (1) constitute the best practicable notice under the circumstances; (2) constitute notice that was reasonably calculated, under the circumstances, to apprise Potential Opt-In Plaintiffs of the pendency of this litigation, the terms of the Amended Settlement, their right to object to the Amended Settlement, their right to exclude themselves from the FLSA Collective, and their right to appear at the July 1, 2021 fairness hearing; (3) constitute due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (4) meet the requirements of due process.

2. No member of the FLSA Collective has objected to the Amended Settlement.

The Court **ORDERS** that:

1. The following FLSA Collective is **CERTIFIED** for final settlement purposes only:

   Current and former non-exempt employees of Defendant VICTRA who worked as store managers and non-manager retail employees who worked in any Defendant VICTRA-owned store in the United States at any time

> between June 10, 2016, and August 7, 2020, and who submitted Consent Forms that were accepted by the Parties and filed with the Court as of June 30, 2021.

2. Each member of the FLSA Collective is bound by this Order, including, without limitation, the release of claims as set forth in the Amended Settlement.

3. VICTRA is bound by this Order, including, without limitation, the release of claims as set forth in the Amended Settlement.

4. The Parties are directed to implement and consummate the Amended Settlement according to the terms and provisions of the Amended Settlement.

5. VICTRA is directed to pay into the Qualified Settlement Fund the sum of $480,767.50.

6. The Settlement Administrator is directed to prepare, issue, and distribute settlement checks and necessary tax forms to each member of the FLSA Collective as provided by the Amended Settlement.

7. Plaintiffs' Counsel is awarded attorney's fees and costs in the amount of $442,250.00, not to be paid from the Qualified Settlement Fund.

8. Named Plaintiffs Jacob O'Bryant and Mark Brandon Baker are awarded Service Awards in the amount of

$10,000.00 each, not to be paid from the Qualified Settlement Fund.

9. Named Plaintiffs' claims and the claims of the FLSA Collective against VICTRA are **DISMISSED WITH PREJUDICE.**

10. The Court retains continuing and exclusive jurisdiction over all matters relating to the administration, consummation, enforcement, and interpretation of the Amended Settlement and this Order.

**SO ORDERED** this 28th day of October, 2021.


*/s/ Samuel H. Mays, Jr.*

SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE